RIVERSIDE RESEARCH INSTITUTE, Plaintiff, and WARWICK INVESTORS, Respondent, v KMGA, INC., et al., Appellants.

First Department, May 21, 1985

APPEARANCES OF COUNSEL

*Stephen M. Rathkopf* of counsel (*Rodney A. Brown* and *Leonard A. Benowich* with him on the brief; *Golenbock & Barell,* attorneys), for appellants.

*Laura H. Rubin* of counsel (*Sherman J. Saxl* with her on the brief; *Fine, Tofel, Saxl, Berelson & Barandes, P. C.,* attorneys), for respondent.

### OPINION OF THE COURT

KUPFERMAN, J. P.

Plaintiff-respondent Warwick Investors (Warwick) is a New York partnership. In 1977 it acquired 80 West End Avenue, a commercial building. At that time, plaintiff Riverside Research Institute (Riverside) was a tenant of several floors pursuant to a lease due to expire September 30, 1980. Defendants-appellants KMGA, Inc., and K&M Jewelry Co. (KMGA) were the tenants of the fifth floor under a lease expiring April 30, 1982, and subleased the sixth floor from Riverside under a sublease due to expire on September 29, 1980.

In early 1980, the American Broadcasting Company (ABC) sought to rent the sixth floor from Warwick, occupancy to commence March 15, 1980. The rent offered was substantially in excess of that paid by KMGA. One of Warwick's partners approached KMGA, offering to compensate them if they vacated the sixth floor by April, instead of September, when the sublease expired. KMGA had recently purchased a building which it eventually planned to use for its activities. Although KMGA allegedly refused the initial offer, negotiations continued.

These negotiations eventually bore fruit, resulting in an understanding on March 13, 1980. KMGA contends that it was to surrender the fifth and sixth floors by April 30, 1980 and Warwick was to pay it $50,000 plus $4,166.67 for every month,

through April 30, 1982, that Warwick was able to lease the fifth floor. It also contends that Warwick was acting as the agent for Riverside. Warwick contends that the deal was contingent upon signing a contract with ABC and disputes the contention that it served as agent for Riverside.

In reliance upon this oral understanding, KMGA had its contractor begin expedited renovations, for early occupancy, on the building it had purchased. Warwick knew of these events for when KMGA encountered trouble with receiving a new telephone switchboard, Warwick contacted ABC and secured permission for KMGA to keep its phone equipment on the premises for 30 to 45 extra days.

While preparations to vacate were occurring, on March 30, 1980, KMGA received a memorandum of understanding of the March 13th meeting. This agreement was clearly contingent on Warwick leasing to ABC and was silent as to the cancellation of Riverside's sublease. KMGA alleged that it contacted Warwick and objected to the contingency. Warwick allegedly stated that the contingency was meaningless. KMGA was allegedly told during the month of April that they would not have to vacate by the end of April, but rather by the end of May.

Although the ABC deal fell through, Warwick told KMGA there was another potential tenant involved, thus lending credence to KMGA's assertion that the deal was not contingent solely upon the ABC deal. KMGA told Warwick on May 20 that it was leaving at the end of May and requested additional elevator service from May 27 until the move was completed. This was provided and KMGA vacated the premises by May 31.

Warwick communicated with KMGA after the move to request that KMGA pay for some minor damage caused by the moving people, a total of $285, which KMGA paid. Warwick also purportedly acknowledged surrender of the premises. Shortly thereafter, KMGA requested that Warwick pay the $50,000 for KMGA's vacating the premises. Warwick denied the existence of such an agreement and demanded payment of KMGA's June rent for the fifth floor. Warwick thereafter brought an action against KMGA for rent due, as did Riverside, claiming KMGA was in default on its rent for the sublease through September 1980.

Warwick's amended pleadings assert causes of action against KMGA for rent due, KMGA's share of real estate taxes, and pro rata share of operating costs and for attorneys' fees and costs. KMGA counterclaimed for the $50,000 and the monthly amounts covering June 1980 to April 1982. It also sought

restitution, claiming Warwick was unjustly enriched at KMGA's expense. The trial court held for Warwick on all its claims and against KMGA on all its claims. It required KMGA to pay Riverside the rent due it under the sublease and awarded both Warwick and Riverside attorneys' fees.

Warwick seeks rent for the period of June 1980 to September 1981, when it sold the building to a third party, based on the fact that KMGA's lease ran through April 30, 1982. KMGA claims that the doctrines of equitable estoppel, surrender and acceptance and/or partial performance mandate dismissal and a finding for it on its counterclaims and third-party complaint against Warwick, seeking indemnification in the event Riverside succeeds in its action for rent owed.

Under the Statute of Frauds, an oral agreement to surrender a lease with more than a year remaining is void. (General Obligations Law § 5-703 [1].) Although more than a year remained on the lease, the Statute of Frauds could be inapplicable due to the doctrine of equitable estoppel. "The purpose of invoking the doctrine [of equitable estoppel] is to prevent the infliction of unconscionable injury and loss upon one who has relied on the promise of another" (*American Bartenders School v 105 Madison Co.*, 59 NY2d 716, 718). However: "Comparable to the requirement that partial performance be unequivocally referable to the oral modification, so, too, conduct relied upon to establish estoppel must not otherwise be compatible with the agreement as written" (*Rose v Spa Realty Assoc.*, 42 NY2d 338, 344). Here, all KMGA did was surrender the premises on an expedited basis. Its sublease was due to expire in September; it moved out at the end of May.

It cannot be said that KMGA's actions were unequivocally referable to the oral modification. However, the actions of the parties are consistent with a surrender and acceptance, and so we do not have to reach the question of whether Warwick was estopped from denying the agreement.

■ KMGA intended to surrender the premises and Warwick knew this. The only claim Warwick originally made was for the $285 for some minor damage caused by the move. This was clearly an acceptance of the surrender, especially in light of the fact that Warwick only asserted its claims after KMGA asked for the $50,000 pursuant to the agreement. Thus, Warwick's claim for rent for the period from June 1980 to September 1981 must be denied.

Warwick also claims that it is entitled to additional rent from KMGA to cover KMGA's share of additional real estate taxes.

However, the portions of any increase attributable to structural improvements to the building were exempted under the lease. A structural change is one that affects "a vital and substantial portion of the premises, as would change its characteristic appearance; the fundamental purpose of the erection; or the uses contemplated, or a change of such a nature as would affect the very realty itself, extraordinary in scope and effect, or unusual in expenditure." (*Wall Nut Prods. v Radar Cent. Corp.*, 20 AD2d 125, 126-127.) In Warwick's building, changes included construction of offices, reinforcing floors, adding new windows, a cafeteria and parking lot. It was also testified to at trial that the improvements made to the building were considered by the parties to be structural changes. This view is supported by the actual bills issued. No evidence otherwise was provided, therefore the decision granting Warwick's request for additional rent should be modified to reflect the amounts actually previously billed by Warwick and its predecessor.

■ The ordering of a reference to fix the amount of attorneys' fees for Warwick must be reversed. Pursuant to section 18 of the lease, Warwick was to have its legal fees reimbursed "[i]n case of any such default, re-entry, expiration, and/or dispossess by summary proceeding or otherwise." In *Hall & Co. v Orient Overseas Assoc.* (84 AD2d 338, *affd* 56 NY2d 965), this same provision was discussed. This court stated (pp 341-342): "These paragraphs would, however, operate as a basis for recovery of attorneys' fees in a situation, not present here, where the landlord has undertaken some action, either by summary proceeding or otherwise, to re-enter the demised premises or to dispossess the tenant."

Here, Warwick did not have to reenter the demised premises or dispossess the tenant, so these provisions do not permit the assessment of legal fees. However, legal fees were also sought under section 19 of the lease. This section allows a landlord to recover legal fees where it institutes, prosecutes or defends any action on behalf of the tenant. This court also construed this provision in *Hall* (*supra,* p 342) where it stated: "[t]his provision clearly requires that the tenant owe an obligation to a third party so that the landlord can perform it in the tenant's stead." In the instant action, Warwick was not acting in KMGA's stead, it was pursuing its own self-interest. Thus, it should not recover attorneys' fees in this action.

■ KMGA seeks the $50,000 allegedly owed under the agreement between it and Warwick. However, this claim must fail. KMGA was to be paid when the premises were leased, first to

ABC, then to whomever else Warwick was negotiating with when the ABC deal fell through. Both performed the initial stages of the agreement: KMGA vacated the premises and Warwick accepted the surrender. Inasmuch as Warwick did not relet the premises, KMGA is not entitled to collect the $50,000.

It is hornbook law that an agency may be implied from the parties' words and conduct as construed in light of the surrounding circumstances. (*See, e.g.,* 2 NY Jur 2d, Agency, § 22.) KMGA knew that Warwick was negotiating with several potential tenants for Riverside's sixth floor. Where Warwick also dealt directly with KMGA to induce it to move, it was reasonable for KMGA to assume that Warwick was Riverside's agent. Here, the surrender was performed as between the agent (Warwick) and the third-party (KMGA), due to Warwick's inducements, but not the principal (Riverside). It is also well-settled law that when an agent exceeds his authority, so that his principal is not bound, the agent will be held liable for the damage occurring to the other contracting party. (*See, e.g.,* 3 NY Jur 2d, Agency, § 282.) In an action by Riverside against KMGA, inasmuch as Warwick induced KMGA to perform, Warwick should be held liable for any payment KMGA has to make to Riverside.

Judgment of the Supreme Court, New York County (Davis, J.), entered on July 30, 1984 and order of July 2, 1984, should be modified, on the law and the facts, without costs, so as to strike the determination that rent is owed for the period of June 1980-September 1981 and to modify the determination that additional rent is owed for increased real estate taxes to reflect the amounts actually previously billed and to strike the ordering of a reference to set attorneys' fees payable by KMGA to Warwick and Warwick is to indemnify KMGA for any payments KMGA is required to make to Riverside for rent on KMGA's former sixth floor sublease and otherwise affirmed.

Ross, Bloom, Kassal and Rosenberger, JJ., concur.

Order, Supreme Court, New York County, entered on or about July 2, 1984, and judgment of said court entered on July 30, 1984, unanimously modified, on the law and the facts, without costs and without disbursements, so as to strike the determination that rent is owed for the period of June 1980-September 1981 and to modify the determination that additional rent is owed for increased real estate taxes to reflect the amounts actually previously billed and to strike the ordering of a reference to set attorneys' fees payable by KMGA to Warwick and Warwick is to indemnify KMGA for any payments KMGA is

required to make to Riverside for rent on KMGA's former sixth floor sublease, and otherwise affirmed.