In re Robert **CHANDLER**, Debtor.

Robert **CHANDLER**, Plaintiff,

v.

LINCOLN CAPITAL CORPORATION and Michael Ira ASEN, Defendants.

Bankruptcy No. 184–40031–260.
Adv. No. 185–0130.

United States Bankruptcy Court,
E.D. New York.

Aug. 17, 1987.

Schwartz, Sachs & Kamhi, Carle Place, N.Y. by Gary Sachs, for debtor.

Saftler, Saftler & Kirschner, Garden City, N.Y. by Harold B. Saftler, for Janet Chandler.

Dreyer & Traub, New York City by Edward H. Tillinghast, III, for Lincoln Capital.

## DECISION AND ORDER

CONRAD B. DUBERSTEIN, Chief Judge.

Before this court is an adversary proceeding instituted by the plaintiff-debtor Robert Chandler ("Chandler" or "debtor" where appropriate) against defendant Lincoln Capital Corporation ("Lincoln") and Michael Ira Asen ("Asen") to determine the validity of and obtain a declaratory judgment relating to a mortgage purportedly held by Lincoln on the debtor's home in Bellmore, New York (the "Property"). The mortgage is dated May 17, 1982 and is in the principal amount of $107,000. The debtor withdrew the action as against Asen on the second day of trial.

On January 6, 1984 Chandler filed a petition in bankruptcy under Chapter 11 of the Bankruptcy Code. The effect of the commencement of the case was to stay a foreclosure proceeding commenced by Lincoln against the Property. In his Schedules, the debtor listed four mortgages encumbering the Property: a first mortgage held by National Bank of North America in the amount of $80,500; a second mortgage held by Astrum Finance Corp. in the amount of $63,000; a third mortgage held by Lincoln in the amount of $107,000 inclusive of legal fees listed as contingent and disputed with respect to the amount of the legal fees; and a fourth mortgage held by Marvin and Mazal Tokayer in the amount of $40,000 listed as disputed as usurious. Subsequently, the debtor amended his Schedules claiming that Lincoln is a contingent and disputed creditor with respect to the validity of its mortgage.

Pursuant to orders of this court dated October 29 and November 21, 1984, the debtor was authorized to sell his right, title and interest in the Property free and clear of liens, with all liens to attach to the proceeds and to be paid pursuant to further order of this court after it fixes and determines the validity thereof. Thereafter, the debtor was authorized to pay in full and complete satisfaction the first and second mortgages. Moreover, by order and judgment of this court dated February 4, 1985, the Tokayer mortgage was deemed usurious and therefore void. After the satisfaction of the first two mortgages and other obligations of the debtor, there remains a balance of approximately $90,000 received from the sale. The proceeds are presently being held in escrow pending a determination of the validity of Lincoln's mortgage. If the mortgage is found to be invalid, the proceeds shall be released from escrow and one-half thereof will be paid over to Mrs. Chandler, and the balance will be retained by the debtor for ultimate use in funding a plan of reorganization in this Chapter 11 case. In the event the case is converted to Chapter 7, the funds will pass to the trustee in bankruptcy.

## BACKGROUND

In June of 1981 Chandler invested approximately $160,000 in a restaurant venture known as Wings on Wooster Street Cafe, Ltd. ("Wings") and became one of its four shareholders. Wings' other shareholders included the Chandlers' neighbor,

Howard Finger ("Finger"); Finger's law partner,[1] Michael Ira Asen ("Asen"); and Donald Kulick ("Kulick"), whose former brother-in-law was also a neighbor of the Chandlers and the Fingers (collectively "Chandler," "Finger," "Asen," and "Kulick" referred to as the "Partners"). At that time, Chandler, Finger, and Asen authorized Kulick to borrow $125,000 for Wings from Mel Cooper and Cooper Funding (the "Cooper loan") to provide Wings with additional start-up capital and funds for renovation of the restaurant.

However, the Partners were paying usurious interest at the rate of $3,000 per week on the Cooper loan. Before Wings opened, Kulick personally paid the interest due on the Cooper loan. Afterwards, the Partners made the interest payments directly from Wing's cash register virtually every Friday night. (Cooper was later convicted of loan sharking and sentenced to thirty years in a federal prison for participating in what has been referred to as one of the largest loan sharking operations in Metropolitan New York).

Thereafter, Lincoln loaned $107,000 to Wings (the "Loan"). The note evidencing Wings' indebtedness to Lincoln was signed by Asen (the "Note") as President of Wings. As security for the Loan Lincoln received a guaranty executed by Asen acting on behalf of the Partners and their wives as their attorney-in-fact (the "Guaranty"). Simultaneous with the execution of the Loan Lincoln received, among other security, a mortgage on the Property (the "Mortgage"). As with the Guaranty, the Mortgage was signed by Asen as attorney-in-fact purportedly acting on behalf of the Chandlers. Asen signed the names of Robert and Janet Chandler acting as their attorney-in-fact pursuant to powers of attorney allegedly signed by the Chandlers on or about May 3, 1982 (the "Powers of Attorney").

In the complaint plaintiff contends that the signatures of Robert Chandler and Janet Chandler as they appear on the Powers

of Attorney held by Asen were forged, and that by reason thereof the Guaranty and Mortgage executed pursuant to the Powers of Attorney are null and void. Plaintiff also argues that neither he nor his wife ever authorized anyone to sign the Guaranty or Mortgage on their behalf in favor of Lincoln, nor did they in any way adopt, assent to or ratify the Loan entered into between Wings and Lincoln at any time before or after the May 17, 1982 closing of the Loan. Finally, plaintiff contends that Lincoln has no lien on the proceeds from the sale of the Property because the Mortgage is invalid.

Lincoln answers and counterclaims that the signatures of Robert Chandler and Janet Chandler appearing on the Powers of Attorney are authentic and not forgeries and therefore the Guaranty and Mortgage executed by Asen are valid and enforceable. In the alternative, Lincoln argues that Asen had authority to enter into the Loan on behalf of Wings and Chandler ratified Asen's acts. For the above reasons, Lincoln argues that the present adversary proceeding should be dismissed, the Mortgage on the Property should be declared valid and enforceable, and Lincoln should be allowed to apply the amount of the Mortgage against the balance of the proceeds received from the sale of the Property.

### DISCUSSION

1. The Signatures of Robert Chandler and Janet Chandler on the Power of Attorney Dated May 3, 1982 are Forgeries.

 Examining the debtor's first contention, that the purported signatures of Robert Chandler and Janet Chandler on the Powers of Attorney dated May 3, 1982 are not their signatures, the court finds that those signatures were forged. At trial plaintiff's handwriting witness, Mr. Charles Hamilton, was called upon and duly qualified as an expert to testify with respect to the signatures that appear on the Powers

---

**1.** Asen and Finger were members of the law firm of Finger, Goldberg, Asen, P.C. which acted as general counsel for Wings. In addition, Finger, in his capacity as representative of the law firm, had represented Chandler individually in a number of separate legal transactions.

of Attorney. To aid him at arriving at an opinion Mr. Hamilton was furnished with authenticated specimens of the signatures of Robert Chandler and Janet Chandler signed in Court. Mr. Hamilton compared the authenticated signatures with the signatures of the Chandlers as they appear on the Powers of Attorney. It was Hamilton's firm opinion that the signatures on the Power of Attorney were *not* those of the Chandlers, and "that the signatures [on the Powers of Attorney] were drawn and not written." (Tr. 9/23/86, p. 49).

Hamilton characterized the signatures on the Powers of Attorney as forgeries. Hamilton explained that there was a distinct attempt by someone to imitate or draw the Chandlers' signatures. Indeed, it was not the case of a person merely writing the Chandlers' signatures; it was an attempt to imitate their handwriting by looking at and then slowly following the pattern of the original signatures. Hamilton testified that each letter of the forged signatures was written in a slow and labored manner and under magnification revealed tremors that did not otherwise exist in the authentic signatures which were swift, decisive and smoothly written. (Tr. 9/23/86, pp. 49–50, 59).

Next, Hamilton compared the Chandlers' initials as they appear on the Powers of Attorney with the Chandlers' authenticated initials signed in court. Again, Hamilton testified that the initials on the Powers of Attorney were not the same as the authenticated initials. (Tr. 9/2/86, pp. 56, 59).

Hamilton also was presented with a letter dated September 20, 1982 from Lincoln to Asen that modified the Loan terms ("Loan Modification Agreement"). The Loan Modification Agreement provided that it would not be effective unless signed by all of the guarantors of the Loan. Hamilton examined the alleged signatures of Robert and Janet Chandler as they appear on the Loan Modification Agreement and concluded that they were not authentic. (Tr. 9/23/86, p. 57, 59).

Section 170.10 of the New York State Penal Law defines forgery in the second degree as follows:

A person is guilty of forgery in the second degree when, with intent to defraud, deceive, or injure another, he falsely makes, completes or alters a written instrument which is or purports to be, or which is calculated to become or to represent if completed:

1. A deed, will, codicil, contract, assignment, commercial instrument ... or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status; ...

The phrase "falsely makes" is defined by Penal Law § 170.00(4) as follows:

A person falsely makes a written instrument when he makes or draws a complete written instrument in its entirety, or an incomplete written instrument, which purports to be an authentic creation of its ostensible maker or drawer, but is not such either because the ostensible maker or drawer is fictitious or because if real, he did not authorize the making or drawing thereof.

Forgery has occurred if the actor is not the ostensible maker or drawer of the instrument and is not authorized by that person to either make, complete or alter the instrument. *People v. Levitan*, 49 N.Y.2d 87, 90, 424 N.Y.S.2d 179, 181, 399 N.E.2d 1199, 1201 (1980); *People v. Cannarozzo*, 62 A.D.2d 503, 506, 405 N.Y.S.2d 528, 530 (4th Dept.), *aff'd*, 48 N.Y.2d 687, 421 N.Y.S.2d 882, 397 N.E.2d 394 (1978); *People v. Piening*, 99 A.D.2d 583, 584, 471 N.Y.S.2d 692, 694 (3d Dept. 1984).

The unequivocal and unimpeached testimony of Mr. Hamilton was that Robert and Janet Chandler neither signed nor initialed the Powers of Attorney dated May 3, 1982, nor did they sign the Loan Modification Agreement dated September 20, 1982. This court credits his supporting testimony on the bases of his professional skills, on its own inspection and comparison of the authenticated specimens with the questioned documents, and because no attempt was made to disprove or discredit his testimony beyond rather perfunctory cross-examination.

In addition, it was brought to this court's attention that David Wolf, an employee at the law office of Finger & Asen, testified at an examination before trial that he notarized the Powers of Attorney on which purported Chandlers' signatures appear without witnessing either of the Chandlers sign the documents. Wolf stated that he acted pursuant to Finger's instruction. Before the closing of the Loan, Finger gave Asen the Powers of Attorney and told him they were in fact signed by the Chandlers.

Because the Chandlers never signed the Powers of Attorney this court concludes their signatures as they appear on same constitute forgeries.

2. Chandler Never Authorized Kulick or Asen to Act as His Agent to Cause the Mortgage to be Placed on the Property.

■ Generally, an express agency relationship exists only if there has been a manisfestation by the principal to the agent that the agent may act on his behalf. *National Equipment Rental, Ltd. v. Szukhent*, 311 F.2d 79 (2d Cir.), *rev'd*, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964); *Ahn v. Rooney, Pace, Inc.*, 624 F.Supp. 368 (S.D.N.Y.1985). Such a relationship may be established by the parties' conduct and words as construed in light of the surrounding circumstances. *Riverside Research Institute v. KMGA, Inc.*, 108 A.D.2d 365, 370, 489 N.Y.S.2d 220, 223 (1st Dept.1985), *aff'd* 68 N.Y.2d 689, 506 N.Y. S.2d 302, 497 N.E.2d 669; *Heine v. Papp*, 97 A.D.2d 929, 930, 471 N.Y.S.2d 18, 19 (3d Dept. 1983). The party asserting the agency relationship has the burden of proving it. *Matter of Shulman Transport Enterprises, Inc.*, 33 B.R. 383 (S.D.N.Y.1983), *aff'd*, 744 F.2d 293 (2d Cir.1984). The extra-judicial or self-serving declarations of an alleged agent generally are not admissible against a principal to establish the existence of an agency relationship or the nature or extent of an agent's authority. *Siegel v. Kentucky Fried Chicken of Long Island*, 108 A.D.2d 218, 222, 488 N.Y.S.2d 744, 747 (2d Dept.1985), *aff'd*, 67 N.Y.2d 792, 501 N.Y.S.2d 317, 492 N.E.2d 390 (1986).

The evidence at trial demonstrates that Chandler did not expressly or impliedly authorize Kulick or Asen to negotiate or close the Loan. While it was established that Chandler was aware of the need for Wings to rid itself of the Cooper Loan and obtain alternate financing, it was never satisfactorily established that Chandler had knowledge of, assented to, authorized, or intended Kulick to negotiate the Loan and certainly not for Asen to cause the Mortgage to be granted on the Property. Notwithstanding the self-serving testimony of Kulick and Asen, this court concludes that they did not act as Chandler's agent when negotiating and closing the Loan or conferring the Mortgage on his Property. Because the debtor is not bound by the actions of Kulick and Asen in procuring the Loan from Lincoln, the Mortgage granted on the Property is invalid.

3. Robert and Janet Chandler Never Ratified the Guaranty or Mortgage Held By Lincoln.

■ In its post-trial brief, Lincoln falls back upon the defense of ratification and estoppel arguing that the debtor ratified the Loan by accepting and retaining the proceeds which had been conditioned, in part, on the Chandlers granting Lincoln a third mortgage on the Property. For ratification to be effective, "the principal must intend to ratify the unauthorized act, he must have the power of ratifying the act done, he must ratify the transaction in its entirety, he must have knowledge of all the material facts surrounding the transaction to be ratified, the person acting in an unauthorized manner must have purported to be acting in the matter on behalf of the principal, and the act itself must be capable of ratification." 2 N.Y.Jur.2d, *Agency*, § 162; *First National Bank of Morrisville v. Starke Design*, 11 A.D.2d 595, 596, 200 N.Y.S.2d 708 (3d Dept.1960). While ratification may be express or implied, the assent necessary to demonstrate ratification, "must be clearly established and may not be inferred from doubtful or equivocal acts or language.... (citation omitted)." *Holm v. C.M.P. Sheet Metal*, 89

A.D.2d 229, 233, 455 N.Y.S.2d 429 (4th Dept.1982).

In support of its position, Lincoln relies on the testimony of Asen, the president and attorney for Wings, and Kulick. According to Asen, the Partners, including Chandler, authorized Kulick to find and negotiate another loan to replace the Cooper loan. In the Spring of 1982 Kulick was introduced to a representative at Lincoln.

Kulick testified that Lincoln agreed to make the Loan to Wings if, among other conditions, it was granted a secured interest in Wings and mortgages on the homes of the Chandlers, Fingers and Kulicks. Although Kulick never actually ascertained whether Chandler had granted a mortgage on the Property to Lincoln, he was under the impression the Property was so encumbered. Lincoln also required the Partners to make it a beneficiary on their life insurance policies for a total recovery of $107,-000.

Kulick testified that shortly thereafter he met with Asen, Chandler and Finger at the law offices of Finger, Goldberg, Asen, P.C. and reported to them the terms of the Loan. According to Kulick, each Partner agreed to the terms of the Loan. Kulick also testified that the Partners agreed that Asen should close the Loan on their behalf as soon as possible to rid themselves of the Cooper loan.

Asen testified that he alone represented the other Partners and their wives at the closing of the Loan as their attorney-in-fact because none of them chose to or were able to attend. He testified that in anticipation of the closing he had numerous conversations at Wings with Mrs. Chandler about the terms of the Loan and the Mortgage on the Property. He stated that he felt obligated to make sure she understood all the terms of the Loan.

On May 11, 1987, a special meeting of the shareholders, directors and officers of Wings was held at which time it was resolved that it was in "the best interests that the Corporation [Wings] enter into arrangements with Lincoln Capital ... providing for financing accommodation to be extended to this Corporation [and] that the President [Asen] or Secretary of this Corporation is hereby authorized and empowered to make, execute and deliver in the name of this Corporation, an Agreement or Agreements with Lincoln Capital." A record of that meeting was signed by Asen as President of Wings.

According to Asen, on May 17, 1982, he attended the closing at the offices of Dreyer & Traub, attorneys for Lincoln, in New York City. He brought the powers of attorney purportedly executed by the Chandlers, Fingers and Kulicks which authorized him to act as their attorney-in-fact. However, Asen testified that he never contacted the Chandlers on or before the closing date to confirm that the Powers of Attorney were valid and in full force and effect. Asen also delivered to Lincoln an opinion letter from the law firm of Finger, Goldberg & Asen, P.C., dated May 17, 1982, that represented to Lincoln that the firm was general counsel to Wings and special counsel to Robert Chandler and Janet Chandler (as well as to the other Partners and their wives) and that they had "examined," among other documents, the proposed mortgage dated May 17, 1982 on the Chandlers' home and opined that Lincoln's mortgage would be a "valid third lien" on the Chandlers' home if properly recorded.[2]

Finally, Asen testified that after the closing he advised Mrs. Chandler on a number of occasions that the closing had occurred.

---

**2.** Asen testified that he assumed that the Powers of Attorney were authentic based upon the representations made to him by his law partner, Finger. (Tr. 11/21/86, p. 21). It is apparent that the opinion letter was issued and signed by him on the strength of such assumption. However, it was suggested during the course of the trial that Asen may have an interest in the outcome of this proceeding to the extent that the opinion letter incorrectly represented the authenticity of the Powers of Attorney. (Tr. 11/21/86, pp. 65–75). It was also revealed during the trial that in the event Lincoln is unsuccessful in this proceeding, releases given by it to the Asens may be rendered ineffective by reason of fraud. Thus, the Asens may be exposed to further liability to Lincoln. By reason of all of the foregoing, there is a strong possibility that Asen's testimony was self-motivated.

According to Asen, she never objected to the Mortgage on the Property granted to Lincoln.

Lincoln also attempts to prove that the Chandlers had knowledge of the Loan by producing a copy of a letter dated May 5, 1982 from personnel at National Bank of North America, the first mortgagee on the Property, to Mr. and Mrs. Robert Chandler. At trial Mr. Beauchamp, a mortgage servicing officer at National Westminster Bank USA (the successor of National Bank of North America), testified that the letter was issued in response to a "principal balance request" on the Chandler's mortgage. Specifically, the letter states, "As per your request please be advised the outstanding principal balance on the before caption mortgage [is] $81,133.71." (Tr. 11/21/87, pp. 85–86).

From the contents of this letter, Lincoln asks the court to infer that the request for the mortgage balance was in fact made by the Chandlers in anticipation of the closing of the Loan, thus purportedly proving the Chandlers had knowledge of and therefore ratified the Loan. However, further examination of Mr. Beauchamp revealed that the letter was never mailed to the Chandlers. Instead, bank records recite that it was "picked up [at the bank] for owner" not "by owner". (Tr. 11/21/86, p. 91). No proof was offered with respect to who picked up the letter at the bank. Furthermore, Beauchamp testified that when a request is made for confidential mortgage information it was not the policy of the bank to verify the signature on the request letter against the signatures on the signature cards of the mortgagors. Finally, Beauchamp testified that it would have been within the accepted practice of the bank to prepare a response letter similar to the one in question solely based upon a request made by telephone from someone identifying himself as Chandler's attorney.

From the foregoing, this court concludes it would be incorrect to infer that the request for the mortgage was made by the Chandlers solely because the bank addressed a letter to them or that they ever received the letter from National Bank of North America. Those conclusions are reinforced by the bank records which reveal that the letter was not mailed to the Chandlers; instead, it was picked up at the bank by someone other than the Chandlers.

At trial, the debtor presented an entirely different picture of his involvement with the business transaction of Wings than that portrayed by defendant's witnesses, Kulick and Asen. Contrary to their claims, the debtor continuously and steadfastly testified that he never signed the Power of Attorney, nor in any way did he authorize Asen, expressly or impliedly, to act on his behalf. Moreover, he testified that no one associated with Asen's law firm or with Wings ever spoke to him with reference to the Power of Attorney. The debtor also testified that he neither intended nor authorized Asen to sign the Guaranty and Mortgage as his attorney-in-fact, and that he had no knowledge with respect to the Loan with Lincoln. Finally, the debtor did not recollect attending a special meeting of the shareholders of Wings held on May 11, 1982 wherein it was resolved that Wings would enter into a Loan agreement with Lincoln.

The debtor further testified that he never authorized, ratified or assented to the Mortgage on the Property. Indeed, the debtor testified that he first learned of Lincoln's mortgage when he was served with a summons and complaint in Lincoln's foreclosure proceeding in November of 1983 while he was living in Miami, Florida.

Similarly, Janet Chandler testified that she never took part in any conversations regarding Lincoln's Loan to Wings, the Guaranty or the Mortgage, that she never gave Asen Power of Attorney, that she had no conversations with her husband regarding the transaction, that the Power of Attorney and Modification Agreement in evidence did not contain her signature, and that she never authorized anyone to sign those documents on her behalf. She also testified that she never discussed any financial details of the Wings' operation with any of the Partners or their wives, nor did she ever see a financial statement.

In the present case, because the testimony of the debtor is given credence, this court concludes that Robert Chandler's conduct falls far short of the requirements necessary to bring into play the doctrine of ratification. Lincoln failed to prove by reasonably clear and certain facts that Robert Chandler had knowledge of all the material facts surrounding the Loan transaction. Further, Lincoln failed to establish that Robert Chandler possessed the requisite intent to ratify Asen's actions. In short, the Chandlers took no steps to give vitality to the invalid Mortgage by ratifying it or the acts of Asen. Thus, because the Mortgage was not properly executed or ratified Lincoln has no interest in the Property.

■ Lincoln also argues that Chandler should be estopped from asserting the defense of forgery because his actions and omissions caused Lincoln to rely on the Power of Attorney purportedly executed by Chandler appointing Asen to act on his behalf.

The doctrine of equitable estoppel prevents a party from enforcing rights against another who in justifiable reliance was misled by the party's conduct or words into acting to his detriment. *Boyles v. Boyles,* 95 A.D.2d 95, 97, 466 N.Y.S.2d 762, 765 (3d Dept.1983). Estoppel does not operate to create rights, it operates merely to preclude a party from denying or asserting any material fact which it has made appear to exist and upon which others have relied to their prejudice. *See Holm v. C.M.P. Sheet Metal, supra.*

New York case law has established a rather restrictive view of estoppel. The essential elements of equitable estoppel are:

(1) conduct which amounts to false representation or concealment of material facts or which gives the impression that the facts are otherwise than as as asserted,

(2) intention or expectation that such conduct would be relied upon by the other party, and

(3) actual or constructive knowledge of the real facts.

The elements of detrimental reliance pertaining to the party asserting estoppel are:

(1) lack of knowledge of the real facts;

(2) reliance on the conduct of the party to be estopped; and

3. action based thereon resulting in a prejudicial change of position.

*In re Delta Motor Hotel of Syracuse, Inc.,* 10 B.R. 585, 598 (Bkrtcy.N.D.N.Y.1981).

In this case the record establishes that the Mortgage, Guaranty and Loan Modification Agreement were the product of forgery and that the debtor never intended, expected or was even aware of the Loan entered into between Wings and Lincoln. Therefore, the doctrine of equitable estoppel is inapplicable to the present case and the debtor is not estopped from denying the validity of the lien.

For all of the foregoing reasons, this court concludes that Lincoln has no valid lien which attaches to the proceeds from the sale of the Property.

SO ORDERED.