OPINION OF THE COURT
Shlomo S. Hagler, J.
In this holdover proceeding, petitioner 626 East 9 Street Housing Development Fund Corp. (HDFC or petitioner) moves for an order as follows:
(1) pursuant to CPLR 408, granting petitioner leave to conduct an examination before trial (EBT) of respondents Richard Collins (Collins) and William Connell (Connell) and for production of certain documents set forth in exhibit H to the motion; and
(2) pursuant to CPLR 3211 (b), dismissing and/or striking all of respondents’ affirmative defenses.[1]
Respondents oppose the motion and cross-move for an order as follows:
(1) pursuant to CPLR 3025 (b), granting respondents leave to amend their answer in the form annexed as exhibit 1 to the cross motion; and
(2) pursuant to CPLR 408, granting respondents limited disclosure of petitioner.
Both the motion and cross motion are consolidated herein for disposition.
Background
Petitioner is a low-income housing corporation organized pursuant to section 407 of the Private Housing Finance Law. The HDFC issued shares to Collins corresponding to apartment 1R located at 626 East 9th Street, New York, New York (subject premises). Collins is also allegedly the proprietary les *630 see of the subject premises pursuant to a proprietary lease issued on the same date.[2] Petitioner alleges that Connell is merely an occupant who possesses no tenancy rights. However, Collins alleges that Connell is the actual tenant of record of the subject premises.
On or about November 23, 1999, petitioner served respondents with a notice to cure advising them that Collins was in violation of paragraph 14 (b) of proprietary lease because he did not occupy the subject premises as his primary residence. Petitioner further advised respondents that “pursuant [to] U 31(e) of the proprietary lease you are hereby required to cure said default on or before December 31, 1999, such date being at least thirty (30) days after service of this notice on you by certified mail, return-receipt requested pursuant to 27 of the proprietary lease.” (Emphasis added.) By notice of termination dated January 7, 2000, petitioner terminated respondents’ tenancy effective January 31, 2000.
Petitioner then commenced this holdover proceeding to recover possession of the subject premises. Respondents interposed an answer, inter alia, containing defenses that Connell “is the lawful owner of the apartment [subject premises] * * * based upon the doctrine of adverse possession” and Collins cured the default “within the period provided for in the proprietary lease and the notice to cure.” (Answer 17, 18.)
Motion to Dismiss
It is well settled that in determining a motion to dismiss pursuant to CPLR 3211, the courts must liberally construe the pleadings, accept the facts as alleged to be true and interpret them in light most favorable to the nonmovant. (See, Leon v Martinez, 84 NY2d 83 [1994].)
Issues
This motion presents, inter alia, the following two unique and seemingly paradoxical issues:
(1) Can a tenant rely on a lease provision that provides for a cure of a default in not occupying the subject premises as his *631 primary residence, notwithstanding the legion of case law that holds that nonprimary residence cannot be cured?
(2) Can an alleged occupant and/or subtenant raise an affirmative defense of adverse possession in the context of a holdover proceeding even though the shares and proprietary lease were issued to, and continue to be held by, the alleged tenant of record?
Notice to Cure
In a rent-regulated setting, courts have long held that a tenant has no right to cure nonprimary residence. (See, 125 E. 31st St. Realty Co. v Watts, NYLJ, Nov. 27, 1987, at 14, col 1 [App Term, 1st Dept]; Duell v Sasaki, NYLJ, Feb. 23, 1987, at 15, col 1 [App Term, 1st Dept].) This is so because “implicit in the regulatory scheme * * * is that the dwelling unit will remain in continuous use as a primary residence.” (Hughes v Lenox Hill Hosp., 226 AD2d 4, 15 [1st Dept 1996].)
Notwithstanding the above, Collins wishes to avail himself of the cure period provided in paragraph 31 (e) of the proprietary lease. However, the HDFC argues that Collins is not entitled to cure the lease violation of paragraph 14 (b) which requires Collins to occupy the subject premises as his primary residence. Petitioner compares this situation to the line of cases in which courts have held that a rent-regulated tenant who sublets at an unlawful profit forfeits the right to cure the otherwise curable sublet breach. (See, Continental Towers Ltd. Partnership v Freuman, 128 Misc 2d 680 [App Term, 1st Dept 1995]; Golden Props. v Knox, NYLJ, May 13, 1998, at 29, col 1 [Civ Ct, NY County].)
Petitioner’s argument is unavailing. While petitioner may be unhappy with the express terms of the proprietary lease, petitioner may not unilaterally withdraw those rights provided for in the proprietary lease that the parties negotiated. In other words, respondents are entitled to enjoy the “benefit of the bargain” that they struck with petitioner.
Even in a rent-regulatory setting, the parties may negotiate terms of a lease that provide a tenant with greater rights than are otherwise required by law. Minick v Park (217 AD2d 489 [1st Dept 1995]) and Waring Barker Co. v Santiago (NYLJ, Jan. 23, 1998, at 25, col 1 [App Term, 1st Dept]) illustrate this point.
In Minick v Park (supra), the lease required the landlord to give the tenant a six-month notice of termination in order for the landlord to obtain possession of the rent-stabilized apart *632 ment for his own personal use and occupancy even though it was not statutorily required. The landlord argued that Rent Stabilization Code (9 NYCRR) § 2524.2 (c) (3) which required lesser notice of not less than 120 days or more than 150 days (Golub Notice) prior to lease expiration controlled. The Appellate Division resoundingly rejected the landlord’s argument holding that “the statutory scheme simply establishes the minimum rights to be accorded tenants, and does not preclude a contract that gives a tenant greater rights.” (Supra, at 490 [emphasis added].)
Similarly, in Waring Barker Co. v Santiago (supra), the lease required the landlord to serve a notice to cure prior to terminating the tenancy upon the ground of “objectionable conduct.” The landlord did not serve a notice to cure, but relied on Rent Stabilization Code § 2524.3 (b) which does not require a landlord to serve a notice to cure in a nuisance holdover proceeding. The Appellate Term also rejected the landlord’s argument based on the Appellate Division’s holding in Minick v Park (supra).
As such, Collins may rely on paragraph 31 (e) of his proprietary lease which gives him an opportunity to cure his default.[3] Accordingly, this court denies the branch of petitioner’s motion to strike respondents’ second affirmative defense.
Adverse Possession
Generally, adverse possession is a common-law doctrine that extinguishes the rights of an owner to property. This doctrine is not limited to the recovery of real property, but also necessarily relates to possession of a cooperative apartment., (See, Peering v 860 Fifth Ave. Corp., 220 AD2d 303 [1st Dept 1995].) Specifically the possession must be:
(1) hostile and under claim of right;
(2) actual;
(3) open and notorious;
(4) exclusive; and
(5) continuous.
(See, Belotti v Bickhardt, 228 NY 296, 302 [1920]; Brand v Prince, 35 NY2d 634 [1974].) Of course, the adverse possessor must be in continuous possession for the statutory period of 10 years. (See, RPAPL 501 et seq.; CPLR 212 [a].)
*633 “When possession is permissive in its inception, adverse possession will not arise until there is a distinct assertion of a right hostile to the owner” (Perez v Perez, 228 AD2d 161, 163 [1st Dept 1996] [emphasis added]). In addition, where a party recognizes that possession belongs to another party, the required element of hostility under claim of right cannot be demonstrated. (MAG Assocs. v SDR Realty, 247 AD2d 516 [2d Dept 1998]; Dittmer v Jacwin Farms, 224 AD2d 477 [2d Dept 1996]; Manhattan School of Music v Solow, 175 AD2d 106 [2d Dept 1991]; Klein v Lowy, 265 AD2d 380 [2d Dept 1999].)
In this case, petitioner issued Collins the shares allocated to the subject premises. Collins admits that Connell has continuously occupied the subject premises with his permission. Specifically, Collins stated that “he gave [his] apartment and [his] shares in the proprietary lease [sic] to Will Connell, Jr. shortly after he moved into that apartment * * * [and] informed the officers of the Tenant’s Association of [his] desire at that time. After that meeting and at other times I repeated my wish that Will Connell, Jr. be the shareholder of record to your board verbally and in writing, to no avail.” (Exhibit G to motion.) In addition, petitioner has only permitted Connell to vote by presenting Collins’ proxy at an annual shareholder meeting.
Based on this record, it is clear that respondents are attempting to obtain a declaration from this court that Connell is the tenant of record and is entitled to possession of the subject premises even though the shares and proprietary lease were issued to, and continue to be held by, Collins. In essence, respondents are affirmatively challenging the “ownership” interest in the subject premises, not the “landlord-tenant relationship.” While respondents may challenge petitioner’s denial to transfer the shares to Connell or to recognize him as the tenant of record, such relief would be appropriate in another forum. In other words, this court lacks jurisdiction to decide respondents’ disguised declaratory judgment action.[4]
*634 Accordingly, this court grants the branch of petitioner’s motion to strike respondents’ first and sixth[5] affirmative defenses without prejudice to commencing the same in proper forum. Laches
Respondents’ laches defense fails to state a claim. Indeed, paragraph 26 of the proprietary lease contains an explicit no-waiver clause. (See, Kev Realty Co. v Goldfarb, NYLJ, Nov. 18, 1993, at 29, col 6 [App Term, 1st Dept]; Rose Assocs. v Weisenthal, NYLJ, May 16, 1988, at 14, col 1 [App Term, 1st Dept].)
Accordingly, this court strikes respondents’ seventh affirmative defense.
Discovery
It is beyond cavil that a party moving for leave of court to obtain pretrial disclosure in a summary proceeding must demonstrate “ample need” for disclosure which must be carefully tailored so as to clarify the disputed facts. (See, CPLR 408; New York Univ. v Farkas, 121 Misc 2d 643 [Civ Ct, NY County 1983].)
In this case, it is undisputed that Collins has not resided in the subject premises for more than 10 years. The only disputed fact is whether Collins cured the default “within the period provided for cure in the proprietary lease and the notice to cure.” (Answer if 18.) Thus, there is no need for production of documents concerning Collins’ nonprimary residence prior to the alleged cure.
Accordingly, this court grants petitioner’s motion to the extent of directing Collins to appear for an examination before trial on June 12, 2000 at 2:00 p.m. in petitioner’s counsel’s office or at another mutually convenient time and place as agreed to in writing by counsel for the parties.
Cross Motion
It is well settled that a motion to amend a pleading should be liberally granted unless the rights of a party are substantially prejudiced. (CPLR 3025 [b].) However, a motion to amend must be supported by an affidavit from an individual with personal *635 knowledge of the facts of the proceeding especially where the movant seeks to include additional defenses (i.e., fraud and misrepresentation). (See, Clark v Foley, 240 AD2d 458 [2d Dept 1997], lv dismissed 91 NY2d 921 [1998]; CFJ Assocs. v Hanson Indus., 260 AD2d 917 [3d Dept 1999].)
Here, no supporting affidavit was presented. Accordingly, this court denies respondents’ cross motion to amend without prejudice and with leave to renew upon proper papers which shall include a supporting affidavit. The remaining branch of respondents’ cross motion for discovery based on their previously stricken defense of adverse possession is denied as being moot.

. Respondents have not opposed petitioner’s motion to the extent that they have withdrawn their third, fourth, fifth, eighth, ninth and tenth affirmative defenses. Therefore, petitioner’s motion is granted to the extent of striking those defenses.

. Petitioner’s counsel avers that petitioner “does not possess a copy of the proprietary lease executed by Collins.” (Frazer affidavit, n 1.) He further states that petitioner failed to retain a copy of the lease and/or has lost the same in the intervening 12 years. However, petitioner’s counsel submits a “standard proprietary lease issued to every shareholder.” Respondents do not deny that the standard proprietary lease governs the rights of the parties. Indeed, respondents rely on paragraph 31 (e) of the standard proprietary lease as one of their affirmative defenses to this proceeding.

. A separate and substantial issue remains for trial: Whether Collins’ alleged return to the subject premises within the cure period remedied the default under paragraph 14 (b) of the proprietary lease.

. While this court does not make any findings of fact or conclusions of law due to its lack of jurisdiction, it appears that respondents’ adverse possession claim may not lie, as the element of hostility is missing. Specifically, it appears that Connell entered into occupancy with Collins’ permission; and Connell has effectively recognized Collins’ “title” to the subject premises by voting with his proxy at a shareholder meeting. The more persuasive issue is whether petitioner unreasonably withheld its consent to transfer the shares to Connell.

. Respondents’ sixth affirmative defense is essentially the same argument couched in an estoppel theory. Moreover, to invoke the principles of equitable estoppel the respondents must demonstrate that the performance was “unequivocally referable” to the alleged oral promise, which appears not to exist herein. (See, L & B 595 Madison v Ravagnan, 242 AD2d 413 [1st Dept 1997]; Riverside Research Inst. v KMGA, Inc., 108 AD2d 365 [1st Dept 1985], affd 68 NY2d 689 [1986].)