Melvin E. Holm, as Trustee of the Minich Children Trust, Appellant, v C.M.P. Sheet Metal, Inc., Respondent.

Fourth Department, October 29, 1982

**APPEARANCES OF COUNSEL**

*Hancock, Estabrook, Ryan, Shove & Hust (Melvin E. Holm* of counsel), for appellant.

*Hiscock, Lee, Rogers, Henley & Barclay (Richard K. Hughes* of counsel), for respondent.

**OPINION OF THE COURT**

Schnepp, J.

This appeal raises the issue whether a lease, which was originally void because it was not signed by the owner of the property or by an agent authorized in writing at the time of its execution, can be made effective and binding on a subsequent owner of the property. A determination of this issue necessarily involves a consideration of the principles of ratification, attornment and equitable estoppel.

The appellant Melvin E. Holm, as trustee of the Minich Children Trust (Holm) and present owner of certain premises located at 6601 Jay Road, De Witt, New York, commenced the eviction proceeding at bar in Justice Court, Town of De Witt, to recover possession of the portion of the premises occupied by respondent C.M.P. Sheet Metal, Inc. (C.M.P.). Holm claimed that C.M.P. occupied the premises under a month-to-month tenancy and that a notice of termination effective March 15, 1981 had been served. C.M.P. alleged in its answer that it entered into and remains in possession of the premises pursuant to an unexpired written lease executed by Anthony Odai, and that Holm, as a successor in interest to the title of the premises, is bound by its terms and conditions.

The proceeding was submitted to Justice Court upon stipulated facts and a letter dated February 2, 1981 from Holm to C.M.P. terminating its tenancy of the premises effective March 15, 1981. The facts stipulated are: (1) that in February, 1980 C.M.P. entered into possession of the premises pursuant to a lease which was executed between Odai, as landlord, and C.M.P., as tenant, and that C.M.P. remains in possession; (2) that at the time the lease was executed title to the premises was in Seneca Investors Corporation (Seneca), and that Odai was its president and principal officer; (3) that rents were paid to and accepted by Seneca, which in March, 1980 conveyed title to Odai and his wife, who subsequently, in the same month of March, 1980, conveyed the premises to William J. Grago, Jr. (Grago), who remained in title through January 12, 1981, when he conveyed the premises to Holm; (4) that when Grago took title C.M.P. was in possession of the premises and Grago had "full knowledge" of the lease and he accepted all rents tendered by C.M.P. and never questioned the lease's validity; (5) that at the time Holm took title to the premises "he was aware Respondent [C.M.P.] was in possession of the premises under a lease"; (6) that the January and February, 1981 rents were tendered by C.M.P. and accepted by Holm; and (7) that the March, 1981 rent was tendered by C.M.P. and "is now being held" by Holm.

The lease dated February 8, 1980 is for a term of two years commencing from February 15, 1980 and grants C.M.P. the option to renew for three additional one-year periods. The lease provides for an annual rental of $17,500 to be paid in equal monthly installments of $1,458.33, and under its terms the landlord (Odai) acknowledged receipt of the sum of $2,916.66 in payment of rental for the months of February and March, 1980. The notice terminating the tenancy requested that the February, 1981 rent be forwarded to Holm.

On June 26, 1981, Justice Court ordered the eviction of C.M.P. on the ground that the lease had been executed by an agent without written authority as required by the Statute of Frauds (General Obligations Law, § 5-703). Justice Court went beyond the stipulated facts and found that Holm acquired title to the property on January 16, 1981 at which time the January rent was due from C.M.P.; that this rent was adjusted at the closing between Holm's predecessor in title and him; and that the February rent was received subsequent to the notice terminating the tenancy. Justice Court further found that under these circumstances payment of rent was not "exclusively referrable to the lease" and that sufficient facts were not presented "to establish a ratification, waiver or estoppel". Possession of the premises was awarded to Holm and an order and warrant of eviction were entered.

C.M.P. appealed to County Court which, in reversing and vacating the judgment of Justice Court, found that Seneca, the owner of the premises when the lease was executed, had ratified the lease signed by its president Odai, in his own name, by acceptance of the payment of rent with full knowledge of the existence of the lease. County Court further supported its decision on the finding that each subsequent purchaser of the property who accepted rent from C.M.P., including Holm, took subject to the lease.

The sole and narrow issue presented on this limited record is whether under the stipulated facts the corporate owner ratified the lease executed by Odai, its president, in his own name, so as to make it enforceable for all purposes and binding on successors in interest taking title with notice of its existence. At the outset we point out that a

town Justice Court has subject matter jurisdiction over summary proceedings (UCJA, § 204), and that the answer to the petition to recover possession of real property may contain "any legal or equitable defense, or counterclaim." (RPAPL 743; see, also, *Taub v Rolfe,* 93 Misc 2d 184.)

Under subdivision 1 of section 5-703 of the General Obligations Law an interest in real property cannot be created unless by a writing subscribed by the person creating the interest or by his agent thereunto authorized in writing. We held in *Genesee Mgt. v Del Bello* (60 AD2d 779) that a lease not signed either by the person creating the interest or by his agent with written authorization creates no interest in real property. Thus, the original lease executed by Odai, not Seneca, the corporate owner of the premises, was void, although the writing contained all the elements of a contract and was a complete instrument between Odai and C.M.P. (see *Dung v Parker,* 52 NY 494, 496; *Club Chain of Manhattan v Christopher & Seventh Gourmet,* 74 AD2d 277, 284-285; General Obligations Law, art 5, tit 7).

C.M.P. claims that the lease is enforceable against Holm and that it was ratified and validated by Seneca and the subsequent grantees Grago and Holm. The law is clear that only an act done on another's behalf may be ratified (Restatement 2d, Agency, § 82). Odai could only be said to have acted on behalf of Seneca; therefore, only Seneca could ratify his acts. Since Odai did not act on behalf of Grago or Holm, neither Grago or Holm may ratify the act of Odai.

Ratification is the express or implied adoption of the acts of another by one for whom the other assumes to be acting, but without authority (see 21 NY Jur, Estoppel, Ratification, and Waiver, § 85). An unauthorized execution of an instrument affecting the title to land or an interest therein may be ratified by the owner of the land or interest so as to be binding upon him (21 NY Jur, Estoppel, Ratification, and Waiver, § 87). Ratification relates back and supplies original authority to execute the conveyance (2 Williston, Contracts [3d ed], § 278, p 253). Although very closely associated with estoppel, ratification differs therefrom because it does not require a change of conduct by, or preju-

dice to, the innocent third party to the transaction (2 Williston, Contracts [3d ed], § 278, p 262; Restatement 2d, Agency, § 82, p 211). The act of ratification, whether express or implied, must be performed with full knowledge of the material facts relating to the transaction, and the assent must be clearly established and may not be inferred from doubtful or equivocal acts or language (see 21 NY Jur, Estoppel, Ratification, and Waiver, §§ 86, 87).

In *Larkin v Radosta* (119 App Div 515) the court held that receiving of rent by a landlord is not ratification of his agent's acts unless he has knowledge of the terms of the lease made by the agent. In *Hyatt v Clark* (118 NY 563) ratification was found where a landlord failed to disaffirm an unauthorized lease executed by her agent and without objection accepted rent for over four years with knowledge of infirmity and the terms of the lease.

Under the stipulated facts the only act performed by Seneca was the receipt of the two month rental payment made to Odai by C.M.P. at the time the lease was executed. Other than inferences which may be drawn from Odai's office as corporate president, there is no evidence that Seneca received the rents with knowledge of the lease or its terms (see *Larkin v Radosta, supra*). The record is silent as to the corporate structure, the circumstances under which Seneca received the rents, whether Odai exceeded his authority, or whether Seneca had knowledge of the infirmity of the lease (see *Anderson v Connor,* 43 Misc 384, 386-387 [App Term, 1904]). Although Seneca's conduct may be arguably sufficient to equitably estop it from denying that Odai had no authority to bind it by executing the lease, it can hardly be described as evidence sufficient to ratify Odai's execution of the lease as its agent and to validate the lease *ab initio* (see *Kursh v Verderame,* 87 AD2d 803).

County Court concluded that Holm, by accepting rent, accepted attornment from C.M.P. and thus validated the lease. Its conclusion was grounded upon the language in *Anderson v Connor (supra,* p 388) which it quoted as follows: "It is well settled in this State that where a lease was originally invalid for want of title in the lessor, and a subsequent purchaser * * * accepts attornment from the lessee under the invalid lease, with knowledge of the terms

and conditions of the lease, he validates the lease." (See, also, *Austin v Ahearne,* 61 NY 6; *Gibbs Oil Co. v Elowitz,* 9 Misc 2d 843; cf. *Tehan v Peters Print. Co.,* 71 AD2d 101.)

The acceptance of an attornment, however, is not proven by the mere "payment and receipt of rent" (*Matter of O'Donnell,* 240 NY 99, 106). The proof viewed in its totality must evince "clear and unequivocal tokens of an intention to accept an attornment." (*Matter of O'Donnell, supra,* p 107.)

In this case the record establishes, at the most, acceptance of two months' rent by Holm. Yet within one month of taking title to the property and before rent for the second month was due on February 15, 1981, Holm notified C.M.P. by letter that its tenancy was terminated effective March 15, 1981. This is not clear and unequivocal proof of an acceptance of attornment by Holm (see *Matter of O'Donnell, supra*). We find that *Anderson (supra)* is inapplicable to this case, and that, under these circumstances, the lease cannot be validated in this manner.

We are thus left with a consideration of the application of the doctrine of equitable estoppel to the within facts. This doctrine precludes a party at law and in equity from denying or asserting the contrary of any material fact which he has induced another to believe and to act on in a particular manner. It " 'rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury' " (*Triple Cities Constr. Co. v Maryland Cas. Co.,* 4 NY2d 443, 448, quoting *Metropolitan Life Ins. Co. v Childs Co.,* 230 NY 285, 292.) Parties are estopped to deny the reality of the state of things which they have made to appear to exist and upon which others have been made to rely. It does not operate to create rights otherwise nonexistent; it operates merely to preclude the denial of a right claimed otherwise to have arisen (21 NY Jur, Estoppel, Ratification, and Waiver, §§ 17-18). New York's rather restrictive view of estoppel requires three elements on the part of the party estopped: (1) conduct which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intent that such conduct (representation) will be acted upon; and (3) knowl-

edge, actual or constructive, of the true facts (21 NY Jur, Estoppel, Ratification, and Waiver, § 21). The elements pertaining to the party asserting estoppel are (1) lack of knowledge of the true facts; (2) good faith reliance; and (3) a change of position (21 NY Jur, Estoppel, Ratification, and Waiver, § 60). These are commonly termed the elements of detrimental reliance.

While the circumstances indicate that the doctrine of equitable estoppel may be applied to Seneca, Odai and Grago, Holm may be equitably estopped only by his own conduct. It is only estoppel by deed which binds successors in interest (see *Mutual Life Ins. Co. of N. Y. v Corey,* 135 NY 326, 335; see, also, 21 NY Jur, Estoppel, Ratification, and Waiver, § 7, p 9). The only conduct attributable to Holm under the stipulated facts is his receipt of rents for January and February, 1981 and his awareness that C.M.P. was in possession of the premises under a lease. The essential element, i.e., detrimental reliance, that these acts induced C.M.P. to believe, act upon this conduct and change its position so as to suffer injury, is lacking in the record before us. Holm's conduct falls far short of the requirements necessary to bring into play the doctrine of equitable estoppel and to estop him from denying the validity of the lease.

In short, Seneca did not give vitality to the void lease by ratifying the acts of Odai, its principal officer and president and thus its agent. While Odai, because he executed the lease, is bound by its terms, he cannot make valid that which was void since he was individually unable to create an interest in the real property at the time he executed the instrument. Thus, because the lease was not ratified by Seneca no interest was created in the real property and the successors in interest in the title were not bound to it; terms. They could only become bound by accepting an attornment, or on the theory of equitable estoppel.

We agree with C.M.P. that Justice Court erred when it considered facts presented by Holm which were outside the stipulated facts (see *Matter of Niagara County Water Dist. v Board of Assessors of City of Lockport,* 31 AD2d 1004). However, based on the foregoing analysis it is unnecessary

for us to go beyond the record to reverse County Court and reinstate the judgment of Justice Court.

Accordingly, the order of County Court should be reversed and the judgment of Justice Court reinstated.

DILLON, P. J., SIMONS, DOERR and MOULE, JJ., concur.

Order unanimously reversed, on the law and facts, without costs, and judgment of Town of De Witt Justice Court reinstated.