DIOCESE OF BUFFALO, Respondent-Appellant, v MICHAEL L. McCARTHY et al., Appellants-Respondents (And a Third-Party Action). (Appeal No. 1.)

DIOCESE OF BUFFALO, Respondent, v MICHAEL L. McCARTHY, Appellant, et al., Defendants. (Appeal No. 2.)

DIOCESE OF BUFFALO, Respondent, v MICHAEL L. McCARTHY, Appellant, et al., Defendants. (Appeal No. 3.)

DIOCESE OF BUFFALO, Respondent, v MICHAEL L. McCARTHY et al., Appellants. (Appeal No. 4.)

Fourth Department, January 21, 1983

APPEARANCES OF COUNSEL

*Burd & McCarthy* (*Timothy A. McCarthy* of counsel), for appellants-respondents in Appeal No. 1; appellants in Appeals Nos. 2, 3 and 4.

*Kennedy & Stoeckl* (*Joseph A. Stoeckl* of counsel), for respondent-appellant in Appeal No. 1; respondents in Appeals Nos. 2, 3 and 4.

OPINION OF THE COURT

DENMAN, J.

█ The center of this dispute is a building located at 76 Church Street in the City of Buffalo owned by the Diocese of Buffalo and occupied by defendant Michael McCarthy and his subtenants, the other defendants, under a lease negotiated in April, 1973. Several points are raised on this appeal but the issue of paramount importance concerns the validity of that lease. For the reasons which follow, we hold that the lease is illegal and void *ab initio* and that defendants must remove from the premises.

The subject property is part of a church complex designated "St. Joseph's Cathedral", which was deeded to the Diocese of Buffalo in 1897, the year in which the diocese was originally incorporated. When a new cathedral was built in 1915, the "old" cathedral, as it was known, became merely a church owned by the diocese. The "Old" St. Joseph's regained its status as a cathedral in 1977 when the "new" cathedral was torn down.

The property at 76 Church Street is a house formerly occupied by the sacristan of the church and his wife adjacent to a parking lot, which is also owned by the diocese and is easily accessible to the courts and government offices. In 1973 Monsignor James A. Healy, Pastor of St. Joseph's, leased the property to defendant Michael McCarthy. The lease agreement was drafted by defendant, a lawyer, and was executed by McCarthy as tenant and St. Joseph's Old Cathedral, by Monsignor Healy, as landlord. The initial term of the lease was for 10 years at a monthly rental of $200 with two five-year renewal options. The lease provided for minimal rent increases based on the cost of living after the first five years. The landlord was to pay all utilities but the lease was silent as to real property

---

* A diocese has only one cathedral, which is the bishop's church. The rector of the cathedral may baptize, marry, and bury people from any parish whereas parish priests generally perform these services only for their own parishioners. Most parishes are independent religious corporations.

taxes. To assist McCarthy in renovating the property, Monsignor Healy loaned him $10,000 in parish funds for which McCarthy signed a promissory note and made monthly payments.

In 1975 the press reported that the diocese was not paying property taxes on the building. As a result the property was assessed and the diocese began to pay the taxes which, combined with utility costs, resulted in the diocese paying more for the property than it was receiving under the lease. When its attempts to negotiate an appropriate rent increase failed, the diocese commenced the present action to have the lease declared void; to have defendant and his subtenants evicted; and to be compensated in money damages for the fair rental value of the premises from the time of execution until the date of judgment. Among the various affirmative defenses asserted by defendant was that Monsignor Healy was acting as an agent of the diocese; was within the scope of his apparent authority in signing the lease; and that the diocese is estopped from denying its validity. Defendant also asserts that, in the event the lease is determined to be void, he is entitled to certain setoffs for the improvements he made in the property.

For reasons which are not apparent, the pleadings were cast as an action for declaratory judgment with accompanying prayer for eviction of defendant and a money judgment. Despite that label, this is in fact an action for ejectment, now entitled an "Action to Recover Real Property" (RPAPL art 6; 13 Carmody-Wait 2d, NY Prac, §§ 89:1, 89:2), and we therefore convert it and treat it accordingly (CPLR 103, subd [c]). Although we would not generally refashion the form of the parties' action, where to do so would not generate factual questions which should first be examined by the court at nisi prius, or create a potential for different claims or defenses, such practice is in furtherance of judicial economy and expeditious resolution of the parties' dispute (see *Crawford v Merrill Lynch, Pierce, Fenner & Smith,* 35 NY2d 291, 299; *Hasbrouck v State of New York,* 28 AD2d 1195, 1196).

### Validity of the lease

■ In 1951 the Legislature passed a special act reincorporating the Diocese of Buffalo. Section 7 of that act provides as follows: "Said corporation shall not sell, mortgage, or *lease* any of its real property unless such sale, mortgage or lease is approved by the bishop of the Roman Catholic Diocese of Buffalo, N. Y., or in case of his absence or inability to act, by the vicar-general or administrator of such diocese." (L 1951, ch 568, § 7; emphasis supplied.) Monsignor Healy testified that he had not obtained approval of the Bishop prior to leasing the premises nor was he aware that such approval was necessary. Bishop Head, who was installed as Bishop of Buffalo just prior to the execution of the lease, testified that he had not authorized the leasing of the building and that only he, the vicar-general and the chancellor, the three officers of the diocesan corporation, had authority to approve leases on behalf of the diocese. In requiring the approval of the Bishop to any transaction involving diocesan real property, the special act dispenses with the requirement of section 12 of the Religious Corporations Law, which requires court approval of any lease, sale or mortgage of real property belonging to a religious corporation. The provisions are analogous and should be similarly construed. The purpose of the requirement is "to protect the members of the religious corporation, the real parties in interest, from loss through unwise bargains and from perversion of the use of the property" (*Church of God of Prospect Plaza v Fourth Church of Christ, Scientist, of Brooklyn,* 76 AD2d 712, 716, affd 54 NY2d 742). Mindful of that purpose and in furtherance thereof, the courts have construed section 12 strictly and held that compliance with it is "absolutely necessary" and "indispensable" to the validity of the transaction (*Dudley v Congregation of Third Order of St. Francis,* 138 NY 451, 457; see, also, *Bernstein v Friedlander,* 58 Misc 2d 492; *Wilson v Ebenezer Baptist Church,* 17 Misc 2d 607) and we believe the special act incorporating the diocese should be similarly construed. Adopting that view, we conclude that the lease herein was void *ab initio* as in violation of the special act. Although the trial court found that the lease was merely voidable and that the act of the

diocese in commencing this lawsuit rendered it void as of that date, we believe that conclusion is unsupportable. Contracts are held to be voidable when one of the parties has the power either to avoid or to validate the agreement and thus it may be, at least potentially, legally operative (1 Corbin, Contracts [1963 ed], § 6). Inasmuch as the diocese, the proper owner of the leasehold, was not a party to the lease, it is totally lacking in legal effect (see *Holm v C.M.P. Sheet Metal*, 89 AD2d 229, 232).

## The Implied or Apparent Authority of Monsignor Healy

Defendant attempts to circumvent the statute by arguing that Monsignor Healy was acting as an actual or implied agent of the diocese; that the diocese should be estopped from denying Healy's authority because it negligently permitted him to hold himself out as its agent; that Healy acted with apparent authority upon which defendant justifiably relied; and finally, that the diocese ratified the lease when, having actual or constructive knowledge of its existence, it accepted the benefits thereunder.

After reviewing the testimony, the trial court concluded, we believe correctly, that the facts did not support a finding of either implied or apparent authority on the part of Monsignor Healy to enter into a lease agreement on behalf of the diocese. However, even assuming that he was acting under implied or apparent authority, the lease would nonetheless be void under the Statute of Frauds. Subdivision 2 of section 5-703 of the General Obligations Law requires that when a lease for a period greater than one year is subscribed by a lawful agent on behalf of his principal, the agent's authorization to enter into the agreement must be in writing. Such authorization " 'need not be in any special form; but it must contain a sufficient expression of an intent to confer authority, and it must confer authority to execute the very contract which the agent undertakes to execute' " (*Commission on Ecumenical Mission & Relations of United Presbyt. Church in U.S. v Roger Gray, Ltd.*, 27 NY2d 457, 465, citing *Bacon v Davis*, 9 Cal App 83). In view of the Statute of Frauds requirement, we need not determine whether the Bishop could approve real property transactions through an agent since authoriza-

tion for an agent to enter into such transactions would have to be in writing.

In response to defendant's argument that he justifiably relied on Monsignor Healy's apparent authority to enter into this agreement, we concur in the observation of the trial court that defendant "is held to a standard of ordinary prudence that incorporates his training and experience as a lawyer" and that he was chargeable with knowledge that in dealing with church property, there are certain requirements to be met and restrictions to be observed. Defendant contends that he believed these premises were part of the realty belonging to St. Joseph's parish. If that had been the case, however, the lease would have required the approval of the court (Religious Corporations Law, § 12).

### Ratification

Defendant's argument that the diocese subsequently ratified the lease must also fail. "Ratification is the express or implied adoption of the acts of another by one for whom the other assumes to be acting, but without authority (see 21 NY Jur, Estoppel, Ratification, and Waiver, § 85). An unauthorized execution of an instrument affecting the title to land or an interest therein may be ratified by the owner of the land or interest so as to be binding upon him (21 NY Jur, Estoppel, Ratification, and Waiver, § 87)" (*Holm v C.M.P. Sheet Metal,* 89 AD2d 229, 232). There is no evidence to suggest a ratification of the subject lease. To the contrary, the proof indicates that when the Bishop learned of the existence of the lease, he caused a letter to be sent to McCarthy advising him that he could rent the property on a month-to-month basis at the rate of $5 per square foot. Additionally, defendant's rental checks were returned to him. When defendant declined to enter into a new rental agreement, the diocese instituted this action. Such conduct can hardly be construed as an act of ratification, which requires a clearly expressed assent to the transaction and may not be inferred from doubtful or equivocal acts (see *Holm v C.M.P. Sheet Metal, supra*).

Defendant has raised a series of procedural errors which we have considered. In view of our determination that the lease was void *ab initio,* the other issues raised by

the parties have been rendered academic. One claim of error deserves mention. Defendant Michael McCarthy testified in his own behalf and completed his direct testimony. His cross-examination was to occur after the luncheon recess. The record indicates that he returned to the courthouse and entered into discussions with plaintiff's counsel aimed at entering into certain stipulations. When those discussions were unsuccessful, defendant McCarthy left the courthouse without seeking permission of the Trial Judge and did not return. Defense counsel informed the court that Michael McCarthy was ill and sought a continuance. The court informed him that he required "that the defendant present a medical witness to testify as to diagnosis, treatment and prognosis of any physical condition which requires the defendant's absence from the continuation of this trial" and required that such witness be present the following morning. He stated further that it would not be sufficient to have a written document. When defense counsel appeared the next morning, he presented the trial court with a letter from a doctor which stated that the defendant Michael McCarthy was suffering from exhaustion and signs of "an anxiety reaction". The court ruled that such letter was insufficient and inasmuch as plaintiff was unable to cross-examine defendant, he ordered that defendant's direct testimony be stricken. We find such ruling to be an entirely proper exercise of discretion by the trial court, which was in the best position to evaluate the factors involved.

### Damages

Having determined that this action is essentially one for ejectment, we look to RPAPL 601 which provides for damages as follows: "§ 601. Damages for withholding real property obtainable in action to recover possession; set-off by defendant. In an action to recover the possession of real property, the plaintiff may recover damages for withholding the property, including the rents and profits or the value of the use and occupation of the property for a term not exceeding six years; but the damages shall not include the value of the use of any improvements made by the defendant or those under whom he claims. Where permanent improvements have been made in good faith by the

defendant or those under whom he claims, while holding, under color of title, adversely to the plaintiff, the value thereof must be allowed to the defendant in reduction of the damages of the plaintiff, but not beyond the amount of those damages." The diocese seeks damages for McCarthy's "illegal and unauthorized occupancy" which it claims is the difference between the fair market rental value of the property, alleged to be $633 per month, and the $200 per month rental paid under the lease. Plaintiff's appraiser testified that the fair rental value of the premises in April, 1973 was $5 per square foot. He based his opinion on its convenient location and comparable rentals for other buildings in the area. At the time of the appraisal in December, 1977, he estimated the fair rental value to be $8.50 per square foot. On cross-examination, however, he acknowledged that he had never inspected the premises in its unimproved condition. Upon reviewing photographs of the property prior to its rehabilitation by McCarthy, he admitted that he would have appraised the building at a lesser figure had he seen it in that condition.

Inasmuch as the appraiser's testimony is incompetent to establish the fair rental value of the premises in April, 1973, we believe that the $200 per month rental under the lease is the best indication of the fair rental value of the premises in its unimproved state. Monsignor Healy testified that the house at 76 Church Street was in an advanced state of deterioration. "The place was a shambles. It was infested with rats, plumbing didn't work, garbage and accumulation of junk littered the place making it even difficult to walk through it, so it was a headache for me what to do with it." He stated that in view of its deteriorated condition, he believed that he was going to have to demolish it, which would have been an additional expense. Photographs of the premises both in its unimproved and improved condition, which were admitted into evidence, provide graphic illustration of the fact that McCarthy completely rehabilitated a badly deteriorated building and turned it into an attractive structure in valuable proximity to local courts and offices. "In the action for use and occupation, a landlord may recover a *reasonable* satisfaction where the agreement for the occupation is not made by

deed * * * Where a rent is reserved in such an agreement, that may be made use of as evidence of the amount of damages to be recovered" (*Woodhull v Rosenthal,* 61 NY 382, 394; see, also, *Earl v Nalley,* 273 App Div 451). Section 601 codifies the common-law rule that the party seeking damages for use and occupation is limited to the rental value of the property in its unimproved state (see Ann., 24 ALR2d 11, 52).

■ In view of the foregoing, we conclude that the lease is the best evidence of what the fair rental value of the premises was in its unimproved state. Inasmuch as that is the rent which McCarthy paid to the diocese from 1973 to the present, the diocese is entitled to no further damages for his use and occupation of the premises. Although section 601 would permit McCarthy to set off the value of permanent improvements made in good faith and under color of title, he is entitled to do so only in the amount of damages owed to plaintiff (see 13 Carmody-Wait 2d, § 89:113). Hence, McCarthy may not set off the value of the permanent improvements to the premises.

■ One further item needs mention. The promissory note which McCarthy executed in return for the loan of $10,000 named St. Joseph's Old Cathedral as the payee. The trial court reformed the note to name as payee the Diocese of Buffalo and ordered that the maker was to continue to pay the installments as he had been doing. Since the note was executed under a mutual mistake of fact, it was proper for the court to order its reformation and we affirm that portion of the judgment (see 16 NY Jur 2d, Cancellation and Reformation of Instruments, § 43).

Accordingly, judgment is modified so as to order that defendants remove from the premises, that plaintiff is not entitled to damages and that defendant may not set off the value of his improvements in the premises.

DILLON, P. J., HANCOCK, JR., DOERR and MOULE, JJ., concur.

Judgment unanimously modified and as modified affirmed, without costs, in accordance with opinion by DENMAN, J. In Appeals Nos. 2, 3 and 4 — orders unanimously affirmed.