Soho Center for Arts and Education, Respondent, v Church of Saint Anthony of Padua, Appellant.

First Department, May 18, 1989

APPEARANCES OF COUNSEL

*Jeffrey R. Metz* of counsel *(Patricia D. DeCicco* with him on the brief; *Finkelstein, Borah, Schwartz, Altschuler & Goldstein, P. C.,* attorneys), for appellant.

*Simon Wynn* of counsel *(Jeffrey D. Buss* with him on the brief; *Buss & Wynn,* attorneys), for respondent.

### OPINION OF THE COURT

Ross, J.

This appeal involves the application of Religious Corporations Law § 12 to the purported lease of church property.

The Church of Saint Anthony of Padua (Saint Anthony) is an incorporated church of the Archdiocese of New York, and it is the owner of real property (premises), which is located at 143 Thompson Street, New York County.

Late in 1982, Ms. Jeanna Gollobin, who was president of the Soho Center For Arts and Education (Soho), met with Father Paul Rotondi, who was then Pastor of the Shrine Church of Saint Anthony, 154 Sullivan Street, New York County, to discuss Soho's use of the ground floor of the premises for a day-care center, and the roof for a playground.

Soho was a nonprofit, tax-exempt organization, which was chartered as a family and community center, and it sponsored a variety of programs for families with young children in the Soho community, including a licensed nursery school.

Following these discussions between Father Rotondi and Ms.

Gollobin, Soho brought in its architects and engineers, who, after inspecting the premises, informed Soho that substantial renovations would be necessary in order to lawfully utilize the premises as a day-care center.

Thereafter, a written agreement, dated April 5, 1983, was signed by Father Rotondi, for Saint Anthony, and by Ms. Gollobin, as president of Soho. This agreement states, in substance: Saint Anthony agreed to make available to Soho, for a period of five years, a portion of the ground floor and the roof of the premises for use as a day-care center; Soho agreed to assume all costs of renovation and of equipping the portion of the premises used by it; Soho agreed to be responsible for any extra costs that Saint Anthony incurred, such as extra utilities, due to Soho's presence on the premises; Soho agreed that all fixed improvements would belong to Saint Anthony, while all equipment, which could be disassembled, would belong to Soho; and Soho agreed to provide partial and full scholarships to parish families. Furthermore, the agreement concluded with this paragraph "While the terms of this agreement cover the next five years, it is our mutual intent that this agreement be renewable at the termination of this five year period with proper adjustments of payments in relation to costs."

In the fall of 1983, Soho commenced operation of the day-care center, and it reimbursed Saint Anthony for utilities.

When the roof renovation was completed in September 1985, which was over two years from the time that Father Rotondi and Ms. Gollobin had their initial discussion about the use of the premises, Father Rotondi contacted Ms. Gollobin concerning entering into a formal lease.

Although, when Father Rotondi signed the 1983 agreement, he did not have written authority from the archdiocese to do so, in September 1985, he received written authority to enter into a lease with Soho.

For more than nine months, which period extended from approximately September 1985 to July 1986, counsel for the archdiocese and Soho attempted to negotiate a lease. However, those negotiations collapsed in July 1986, when Father Rotondi was transferred to Kings County.

Upon the basis that Soho was a month-to-month tenant, Saint Anthony served Soho with a 30-day notice, and demanded that Soho vacate the premises by September 30, 1986.

By summons and complaint, dated September 27, 1986, Soho

(plaintiff) commenced an action against Saint Anthony (defendant) for, in substance, specific performance of the 1983 agreement, as a valid lease, and money damages. Also, by order to show cause, signed by a Justice of the Supreme Court on September 29, 1986, plaintiff sought a preliminary injunction to prevent defendant from evicting it. Defendant responded with a cross motion to dismiss the complaint. Thereafter, the IAS court denied defendant's cross motion, granted plaintiff's application for a preliminary injunction, and plaintiff posted a $15,000 undertaking.

After joinder of issue, defendant moved, pursuant to Real Property Law § 220, for an order to require plaintiff to pay use and occupancy, pending disposition of this action, and such motion was granted. Subsequently, upon the ground that plaintiff had not complied with the prior order, entered August 27, 1987, defendant moved for entry of a money judgment concerning use and occupancy, and the IAS court denied that motion in an order entered September 2, 1988.

Furthermore, defendant moved for summary judgment, pursuant to, *inter alia,* Religious Corporations Law § 12, and by an order, entered September 8, 1988, the IAS court denied that motion.

Defendant appeals from the IAS orders, entered September 2, 1988, and September 8, 1988, and we granted defendant's motion to consolidate its appeals.

Plaintiff contends, in its amended complaint, in substance, that it relied in good faith on the assumption that, when Father Rotondi signed the 1983 agreement, which permitted plaintiff to use the premises for five years, with a renewal clause for an additional five years, he was acting for defendant. Moreover, upon the basis of that assumption, plaintiff claims it, *inter alia,* expended approximately $50,000 in renovating those premises.

More than 40 years ago the Court of Appeals held in *Hedeman v Fairbanks, Morse & Co.* (286 NY 240, 248-249 [1941]) that "where no written authority of the agent has been proven, questions of agency and of its nature and scope and of ratification by or estoppel of the principal, if dependent upon contradictory evidence or evidence, though not contradictory or disputed, from which different inferences reasonably maybe drawn, are questions of fact to be submitted to the jury under proper instructions by the court".

In substance, defendant asserts that it is irrelevant,

whether Father Rotondi had apparent authority when he signed the 1983 agreement with plaintiff, since any agreement, to lease defendant's property for more than five years, must be in strict conformity with the provisions of Religious Corporations Law § 12 *(Diocese of Buffalo v McCarthy,* 91 AD2d 213, 217 [1983], *lv denied* 59 NY2d 605 [1983]).

■ Herein, the subject 1983 agreement for five years, contains a clause which provides for an option to renew for an additional five years. It has been held by the Court of Appeals that the exercise of an option to renew "accomplishes not a new lease, but simply a prolongation of the original agreement, so that, in effect, the original lease [becomes] one for the entire term" *(Atkin's Waste Materials v May,* 34 NY2d 422, 426 [1974]). Applying the rule of *Atkin's Waste Materials v May (supra)* to the instant agreement means that the lease term involved is for 10 years.

In view of the fact that this agreement purported to lease church property for more than five years, Religious Corporations Law § 12 requires that, before such a lease can become valid, the Archbishop or Bishop of the church must first give his consent, and then court approval of the lease must be sought. Our examination of Religious Corporations Law § 12 indicates that the legislative intent, for requiring this prior consent and approval, "is to protect the members of the religious corporation, the real parties in interest, from loss through unwise bargains and from perversion of the use of the property" *(Church of God v Fourth Church of Christ, Scientist,* 76 AD2d 712, 716 [1980], *affd* 54 NY2d 742 [1981]).

Our review of the record indicates that plaintiff has not presented any evidence that the Bishop ever gave his consent to lease the premises to it.

We held in *Smith v Johnson Prods. Co.* (95 AD2d 675, 676 [1st Dept 1983]), that: "A party appearing in opposition to a motion for summary judgment must lay bare his proof and present evidentiary facts sufficient to raise a genuine triable issue of fact * * *. Mere conclusory assertions, devoid of evidentiary facts, are insufficient for this purpose, as is reliance upon surmise, conjecture or speculation."

Based upon our analysis *supra,* we find that the IAS court erred, when it denied defendant's motion for summary judgment, since the 1983 agreement is "void *ab initio* as [a] violation of [Religious Corporations Law § 12]" *(Diocese of Buffalo v McCarthy, supra,* at 217). Accordingly, we reverse

the IAS order entered September 8, 1988, and grant the motion.

As mentioned *supra*, the IAS court, in an order entered August 27, 1987, granted defendant's motion for use and occupancy, pending the disposition of this action. The plaintiff appealed. Subsequently, we granted defendant's motion to dismiss that appeal for failure to timely perfect.

■ While the defendant, as the owner, is "entitled to recover for the fair market value of use and occupancy of the [premises] by plaintiff" *(Cooper v Schube,* 101 AD2d 737 [1st Dept 1984]), plaintiff is entitled to a setoff for the value of permanent improvements it made in good faith (RPAPL 601).

Although "[o]ne who deals with an agent does so at his peril, and must make the necessary effort to discover the actual scope of authority" *(Ford v Unity Hosp.,* 32 NY2d 464, 472 [1973]), we find that, based upon the record before us, plaintiff acted in good faith *(Miceli v Riley,* 79 AD2d 165, 168-169 [1981], *appeal withdrawn* 54 NY2d 681 [1981]).

We have examined the record, and we find that the IAS court, in its order entered September 2, 1988, properly denied defendant's motion for a money judgment concerning use and occupancy. However, in the instant action, there is a dispute as to how much plaintiff has paid defendant in compliance with the prior IAS order, entered August 27, 1987, and we do not find any indication in the record that plaintiff has received a setoff for the permanent improvements it claims to have made. Therefore, we modify the IAS court order, entered September 2, 1988, only to the extent of remanding the matter to the IAS court for an evidentiary hearing to determine the amount due defendant for use and occupancy, with a setoff to plaintiff for any permanent improvements it can prove at such hearing.

We have considered the other points raised on appeal, and find them to be without merit.

Accordingly, the order, Supreme Court, New York County (Irma Vidal Santaella, J.), entered September 8, 1988, which denied defendant's motion for summary judgment, should be unanimously reversed, on the law and on the facts, motion granted, and complaint dismissed, without costs; and the order, Supreme Court, New York County (Irma Vidal Santaella, J.), entered September 2, 1988, which denied defendant's motion for entry of a money judgment concerning use and occupancy, should be unanimously modified, on the law and

on the facts, only to the extent of remanding the matter to the IAS court for an evidentiary hearing to determine the amount due defendant for use and occupancy, with a setoff to plaintiff for any permanent improvements it can prove at such hearing, and, except as thus modified, otherwise affirmed, without costs.

MURPHY, P. J., KUPFERMAN and RUBIN, JJ., concur.

Order, Supreme Court, New York County, entered on September 2, 1988, unanimously modified, on the law and on the facts, only to the extent of remanding the matter to the IAS court for an evidentiary hearing to determine the amount due defendant for use and occupancy, with a setoff to plaintiff for any permanent improvements it can prove at such hearing, and, except as thus modified, otherwise affirmed, without costs and without disbursements, and order of said court entered on September 8, 1988, unanimously reversed, on the law and on the facts, without costs and without disbursements, the motion granted and the complaint dismissed.