■ HEALTH-LOOM CORPORATION et al., Appellants, v SOHO PLAZA CORPORATION et al., Respondents. [709 NYS2d 165] —Order, Supreme Court, New York County (Ira Gammerman, J.), entered on or about March 31, 1999, which granted defendants' motion for summary judgment dismissing plaintiffs' second, ninth, tenth and eleventh causes of action and denied plaintiffs' cross-motion for partial summary judgment, unanimously modified, on the law, to deny defendants' motion and reinstate the

above-mentioned causes of action, and otherwise affirmed, without costs.

Defendant Sixty-Six Crosby Associates (Sixty-Six), a partnership, had a 99-year lease for two floors of a building owned by defendant Soho Plaza Corporation (Soho). Nathan Chao was the managing partner of Sixty-Six, and his wife Rose Chao (Chao) was its managing agent. In 1983, plaintiff Health-Loom Corporation (Health-Loom) entered into a 10-year sublease with Sixty-Six. Health-Loom agreed to pay a higher rent in return for a purchase option, pursuant to which Health-Loom could acquire the remainder of the 99-year lease.

Health-Loom's dealings with Sixty-Six were conducted entirely through Rose Chao. She routinely signed leases, verified pleadings and made policy decisions regarding the lease and the subsequent litigation with Soho. Moreover, Sixty-Six's attorney, Herbert Kramer, dealt solely with Chao with respect to Sixty-Six's legal matters; he and his associate did not even have the telephone numbers of the Sixty-Six partners.

Health-Loom notified Sixty-Six that it was exercising its option in 1985, which was confirmed by a letter from Herbert Kramer. However, the closing did not occur on the scheduled date. Soho, which wanted to reacquire the leased space, served Health-Loom and Sixty-Six with numerous notices of violation, which were apparently meritless, so as to intimidate Sixty-Six into withholding the exercise of the purchase option and transferring the remainder of the 99-year lease to Soho. Sixty-Six and Health-Loom cooperated in an effort to obtain an estoppel certificate from Soho certifying that the lease was in full force and effect. Without assurance that the owner considered the lease to be valid, the closing could not take place.

After several years of litigation, on April 26, 1990, all three parties executed a settlement agreement, signed by their attorneys, in which Soho agreed that it would conditionally withhold further efforts to terminate the lease. On the same date, Health-Loom and Sixty-Six, by their attorneys, signed an Extension Agreement which stipulated that Health-Loom had exercised its option and extended the closing date until 30 days after Soho notified Sixty-Six of Soho's conclusions concerning the alleged violations.

However, in January 1993, Sixty-Six transferred the lease to 514 Broadway, a corporate nominee owned by Soho, without giving Health-Loom notice, as was required by the settlement agreement. When 514 Broadway refused Health-Loom's demand to close on the purchase option, this action was commenced in April 1993. The causes of action that remain, after

various successful dismissal motions not at issue here, are the second cause of action seeking a declaratory judgment that the purchase option was properly exercised and the ninth, tenth and eleventh causes of action for tortious interference with contract.

Defendants' position is that the Extension Agreement was invalid because Kramer and Chao did not have authority to bind Sixty-Six. Therefore, they claim that the Statute of Limitations bars plaintiffs from bringing suit in 1993 to enforce an option that was exercised in 1985.

On a previous appeal in this action, we affirmed the denial of defendants' motion for summary judgment on these causes of action. We held that "[w]hile the prime lessee's attorney did not have written authorization to bind said lessee * * * questions of fact exist as to whether a stipulation signed by the prime lessee's attorney extending the time to close the exercise of the option was ratified (see, Holm v C.M.P. Sheet Metal, 89 AD2d 229, 232-233)" (Health-Loom Corp. v Soho Plaza Corp., 243 AD2d 317).

Accordingly, in July 1998, a hearing on the ratification issue was held before Justice Jane Solomon. While Justice Solomon expressed the view that Chao had deceived Health-Loom, she confined her decision to the issue of ratification because she believed that she had no authority, because of the terms of the order referring the issue to her, to reach plaintiffs' equitable estoppel and apparent authority arguments. She held that there was no ratification because there was no probative evidence that any Sixty-Six partner knew of Kramer's execution of the Extension Agreement. Justice Gammerman dismissed the remaining causes of action on the basis of this ruling.

Since Justice Solomon limited her analysis to the issue of express ratification and did not consider the other issues that were raised in Holm v C.M.P. Sheet Metal (supra), namely implied ratification and equitable estoppel, it was error for Justice Gammerman to decline to consider and rule on these issues. Equitable estoppel "requires three elements on the part of the party estopped: (1) conduct which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intent that such conduct (representation) will be acted upon; and (3) knowledge, actual or constructive, of the true facts" (Holm v C.M.P. Sheet Metal, 89 AD2d 229, 234-235, supra).

Plaintiffs contend that Sixty-Six cloaked Chao and Kramer with apparent authority and, as such, is estopped from now

claiming that their actions were unauthorized and not binding on it. Such a claim requires that plaintiffs identify conduct on the part of Sixty-Six by which they were misled, since "the existence of 'apparent authority' depends upon a factual showing that the third party relied upon the misrepresentations of the agent because of some misleading conduct on the part of the principal" (*Ford v Unity Hosp.*, 32 NY2d 464, 473).

Plaintiffs persuasively argue that such misleading conduct can be found herein in two acts performed by principals of Sixty-Six on which plaintiffs relied, namely that (1) they gave Chao complete authority to act on their behalf, such that she was the only person to represent Sixty-Six in any dealings with plaintiffs, and (2) they remained utterly silent for a period of many years and throughout numerous court proceedings, in which Chao signed pleadings and Kramer made numerous court appearances. Moreover, Sixty-Six's claim that it was unaware of Chao's actions is belied by her uncontradicted deposition testimony that she periodically advised the partners of all ongoing matters. It is highly implausible that Chao could have directed and participated in several years of litigation against Soho, with the sole aim of removing obstacles to the transfer of the lease to Health-Loom, unless Sixty-Six was aware that the time for closing had been extended. (This is especially true since Chao's husband is the managing partner.)

In *Hallock v State of New York* (64 NY2d 224, 232), the Court of Appeals found that a principal had clothed his attorney with apparent authority to enter into a settlement by having that attorney represent him throughout a litigation, engage in settlement negotiations, and appear at the final pretrial conference, and that the attorney's presence constituted an implied representation by the principal to the defendants that the attorney had authority to bind the principal to the settlement. In *1420 Concourse Corp. v Cruz* (175 AD2d 747, 749), this Court applied that ruling to a case in which a landlord sought to set aside a stipulation entered into four years previously, on the grounds that neither its employee nor its attorney had been authorized to do so. We held that the landlord's "silence and acquiescence constituted a ratification of the terms of the stipulation" (*supra*, at 750).

Plaintiffs have demonstrated the detrimental reliance necessary to establish their claim of equitable estoppel (*BWA Corp. v Alltrans Express U.S.A.*, 112 AD2d 850, 853). In reliance on the written extension agreement, plaintiffs refrained from taking steps to enforce their option before the lease was sold to 514 Broadway.

Plaintiffs' cross-motion sought summary judgment "on the issue of equitable estoppel and the issue of specific performance as to the defendant, 514 Broadway." However, whether Health-Loom may obtain specific performance from 514 Broadway depends on whether the latter purported to purchase the lease despite having knowledge of Health-Loom's rights (*Morrocoy Marina v Altengarten*, 120 AD2d 500). As the parties have not developed the record with respect to this issue because they focused solely on the validity of the Extension Agreement, summary judgment would be premature on this claim (*see, Spuches v Royal View*, 13 AD2d 815, 816). Concur—Rosenberger, J. P., Nardelli, Tom, Wallach and Saxe, JJ.