**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 23-1013**

LIBERTY MUTUAL INSURANCE COMPANY,

> Plaintiff - Appellee,

v.

ATAIN SPECIALTY INSURANCE COMPANY, formerly doing business as USF
Insurance Company,

> Defendant - Appellant,

and

MCCLURE MANAGEMENT, LLC; CINDY KAY ADAMS,

> Defendants,

v.

SIMKISS AGENCY, INC., d/b/a Simkiss & Block; SIMKISS & BLOCK; DANIEL
P. DUNIGAN,

> Third Party Defendants.

Appeal from the United States District Court for the Northern District of West Virginia, at
Wheeling.  John Preston Bailey, District Judge.  (5:21-cv-00018-JPB)

Argued:  October 30, 2024                    Decided:  January 15, 2024

Before WYNN, HARRIS, and HEYTENS, Circuit Judges.

—————————

Affirmed by published opinion. Judge Wynn wrote the opinion, in which Judge Harris and Judge Heytens joined.

—————————

**ARGUED:** Marcie Lynn Schout, QUILLING SELANDER LOWNDS WINSLETT MOSER PC, Dallas, Texas, for Appellant. Melissa Jane Lee, MANIER & HEROD, P.C., Nashville, Tennessee, for Appellee. **ON BRIEF:** Matthew J. Perry, Huntington, West Virginia, Brian S. Kane, BURNS WHITE LLC, Pittsburgh, Pennsylvania, for Appellant.

WYNN, Circuit Judge:

This case originates from a contract dispute between two insurance companies: Liberty Mutual Insurance Company ("Liberty"), and Atain Specialty Insurance Company ("Atain"). When Atain refused to indemnify Liberty for a $1 million appeal bond, Liberty sued Atain for breach of contract pursuant to a previously established indemnity agreement. In response, Atain argued that it did not have to indemnify Liberty under the theory of equitable estoppel. The district court rejected Atain's equitable-estoppel defense and granted summary judgment to Liberty. We affirm.

I.

A.

In 2018, two claimants won a jury verdict for racial discrimination against McClure Hotel ("McClure") in West Virginia state court, receiving a total award of $950,000 (the "underlying action"). *Taylor v. McClure Mgmt., LLC*, No. 12-C-287, 2018 WL 4997387, at *1 (W. Va. Cir. Ct. Aug. 14, 2018), *aff'd*, 849 S.E.2d 604 (W. Va. 2020). McClure appealed to the Supreme Court of Appeals of West Virginia[1] and moved the trial court to stay entry of judgment. The trial court granted McClure's motion on the condition that McClure post a $1 million appeal bond by March 1, 2019.

---

[1] "At the time, West Virginia did not have an intermediate appellate court. That has since changed: in 2021, the West Virginia Legislature created an Intermediate Court of Appeals and mandated that it was to 'be established and operable on or before July 1, 2022.'" *Wall Guy, Inc. v. Fed. Deposit Ins. Corp.*, 95 F.4th 862, 865 n.1 (4th Cir. 2024) (quoting 2021 W. Va. Acts 875 (codified at W. Va. Code § 51-11-3(b))), *cert. denied*, No. 24-159, 2024 WL 4427249 (U.S. Oct. 7, 2024).

To secure the appeal bond, McClure reached out to Atain, its general-liability insurer. Atain had been funding McClure's defense. But shortly after McClure lost the underlying action, Atain filed a declaratory judgment action in federal district court, seeking a declaration that McClure's insurance policy with Atain did not cover damages resulting from acts of racial discrimination (the "coverage action"). If successful, Atain would be able to withdraw from participation in McClure's legal defense. This coverage action was pending when McClure asked Atain to secure the appeal bond.

Nevertheless, on February 19, 2019, in response to McClure's request, Atain reached out to its broker, Daniel Dunigan of Simkiss & Block,[2] asking Dunigan to secure the bond. Dunigan immediately communicated with Liberty to obtain the bond.

Liberty and Atain had a longstanding contract (the "Indemnity Agreement"), executed in 2010, under which Liberty would issue appeal bonds for Atain's insureds. So, upon receiving the request from Dunigan, Liberty issued a $1 million appeal bond (the "Appeal Bond"), which McClure then posted with the court. The Appeal Bond identified Liberty as the "Surety" and stated that the Bond would "remain in full force and effect" until McClure "satisf[ied] any money judgment contained in the judgment [in the underlying action] in full, including, if allowed by law, costs, interest, and attorneys' fees, and damages for delay." J.A. 32.[3]

---

[2] During the proceedings below, Atain filed a third-party complaint against Dunigan and Simkiss & Block, but voluntarily dismissed the complaint a year later.

[3] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

On June 24, 2019, while McClure's appeal in the underlying action was still pending before the state Supreme Court of Appeals, Atain won its coverage action against McClure in federal district court.[4] The court granted summary judgment to Atain, concluding that Atain no longer had a "duty to defend or indemnify [McClure] in the [underlying action] or its appeal." *Atain Specialty Ins. Co. v. McLure Mgmt., LLC*, No. 5:18-CV-144, 2019 WL 13275417, at *6 (N.D. W. Va. June 24, 2019). As a result, Atain notified McClure that it was withdrawing from participation in McClure's legal defense, effective August 30, 2019. However, it took no action related to the Appeal Bond, which remained posted in state court.

## B.

On December 17, 2019, broker Dunigan emailed Atain's Claims Director, Andrew Miller, with a renewal invoice for the Appeal Bond. Miller responded that Atain would not be renewing the Appeal Bond, writing that "Atain won its coverage action . . . . [and] then withdrew from the defense in the underlying case effective Aug[ust] 30, 2019." J.A. 252. Dunigan replied, "To close the bond with [Liberty], I need to provide documentation that the case has been won/closed and their bond exposure has been extinguished. Please send me what you have and I'll get things in motion to close the bond." *Id.* The next day, Miller sent an email to Dunigan attaching the district court opinion granting Atain's motion for summary judgment, along with the court's judgment. Of course, the documents that Miller sent related only to the *coverage* action—not the underlying action in which the Appeal

---

[4] Judge Bailey, who was the district judge in this case, also presided over Atain's case against McClure.

Bond was posted (and which was still pending). Nevertheless, Dunigan confirmed receipt of the attachments and stated: "We will work with [Liberty] to close the bond. Should there be anything else we need from your end, we will be in touch." J.A. 251.

Dunigan immediately forwarded Miller's attachments—the opinion granting Atain's motion for summary judgment in the coverage action, and the judgment itself—to a Liberty underwriter, notifying her that "the subject bond should be closed." J.A. 256. About an hour later, the underwriter responded to Dunigan and copied a Liberty underwriting assistant, writing, "We will close [the bond] in our system." *Id.* And the next day, the underwriting assistant wrote to Dunigan, "This bond has been cancelled. . . . I have backed out the 2020 renewal premium which we had billed." J.A. 258.

On April 9, 2020, McClure's defense counsel in the underlying action emailed two Atain employees, including Claims Director Amy Felder, asking if Atain would "re-consider its position on paying for defense counsel" because "[Atain] may still have some interest in this matter given the previous actions taken to protect the [defendants.]" J.A. 488. He noted that oral argument was upcoming in the state Supreme Court of Appeals and reminded Atain that "[t]here [was] an appeal bond in place written by Liberty." *Id.* Felder replied, declining the request. Her email did not mention the Appeal Bond.

C.

On October 16, 2020, the Supreme Court of Appeals of West Virginia affirmed the judgment against McClure in the underlying action, triggering McClure's obligation to pay the judgment. *McClure Mgmt.*, 849 S.E.2d at 606. The Indemnity Agreement between Liberty and Atain provided that, if an appeal was unsuccessful, the bond's payment

6

obligations would be triggered and Atain would be obligated to reimburse Liberty for "any and all losses, costs, and damages of whatsoever kind or nature . . . which [Liberty] may at any time sustain or incur by reason of the extension of surety credit to" Atain or its insureds. J.A. 22.

So, on October 26, the Liberty underwriter involved in the December 2019 correspondence emailed Dunigan, stating that the Appeal Bond had "resurfaced" in light of the ruling. J.A. 402. She acknowledged their prior exchanges regarding closing the Appeal Bond but explained that "[t]he release documents [she] received in December 2019 cover[] a separate case"—the coverage action—and that "after reviewing this again it seems that Atain may still be liable on the captioned bond" for the underlying action. *Id.* She asked for an update regarding the "status of payment to the plaintiffs" and notified Dunigan that, "[g]iven the circumstances," Liberty "may need to reinstate the bond and bill [Atain] accordingly." *Id.* In that case, Liberty would close the bond "[o]nce the payment [was] satisfied and the subsequent satisfaction of judgment/dismissal [was] filed." *Id.*

After receiving "multiple correspondences" from counsel for the plaintiffs in the underlying action "demanding payment" from Liberty "under the [Appeal] Bond," on November 12, 2020, Liberty sent Atain a letter "demand[ing] that [Atain] honor its obligations to Liberty under the Indemnity Agreement by satisfying the judgment underlying the [Appeal] Bond." J.A. 35–36. Atain responded by letter a week later, disputing its responsibility to pay the Appeal Bond.

On November 30, 2020, the West Virginia trial court lifted the stay of execution of judgment and ordered Liberty to pay the full Appeal Bond proceeds to the plaintiffs in the

7

underlying action.[5] That same day, Liberty sent a second letter to Atain, demanding that Atain "*immediately*" pay the Appeal Bond. J.A. 38. Atain did not do so, and Liberty paid the $1 million Appeal Bond on December 14, 2020.

## D.

On January 29, 2021, Liberty sued Atain in federal district court, alleging that Atain had breached the Indemnity Agreement.[6] Liberty sought to recoup the $1 million Appeal Bond payout, a $2,800 unpaid premium, and other "fees and expenses." J.A. 18. In its operative answer to Liberty's complaint and again in its response to Liberty's motion for summary judgment, Atain argued that Liberty was estopped from recovery because Atain reasonably relied, to its detriment, on Liberty's misrepresentation that the Appeal Bond was closed after the judgment issued in the coverage action.

The district court granted summary judgment to Liberty. *Liberty Mut. Ins. Co. v. Atain Specialty Ins. Co.*, No. 5:21-CV-18, 2022 WL 16722356, at *5 (N.D. W. Va. Nov. 4, 2022), *reconsideration denied*, No. 5:21-CV-18, 2022 WL 18671128 (N.D. W. Va. Dec. 6, 2022). As relevant here, the court rejected Atain's estoppel defense, finding that Liberty had not misrepresented the status of the Appeal Bond to Atain. *Id.* at *4.

---

[5] Although the value of the Appeal Bond ($1 million) was greater than the initial verdict ($950,000), the court noted that "the amount of judgment due to [the p]laintiffs" by that date, "including post-judgment interest and costs . . . , exceed[ed] the amount of the Appeal [B]ond posted." J.A. 101.

[6] Liberty also sued McClure and McClure's manager, Cindy Adams, arguing that they were jointly and severally liable to Liberty under the common law. The district court rejected that argument because it concluded that Atain was liable. *Liberty Mut. Ins. Co. v. Atain Specialty Ins. Co.*, No. 5:21-CV-18, 2022 WL 16722356, at *5 (N.D. W. Va. Nov. 4, 2022), *reconsideration denied*, No. 5:21-CV-18, 2022 WL 18671128 (N.D. W. Va. Dec. 6, 2022). For purposes of this appeal, we discuss only the proceedings against Atain.

Atain filed a motion for reconsideration, which the court promptly denied. Atain timely appealed and successfully moved to stay execution of the judgment pending appeal.

## II.

The only issue before us on appeal is whether the district court correctly rejected Atain's equitable-estoppel defense to Liberty's breach-of-contract claim. We conclude that it did.[7]

"We review de novo a district court's award of summary judgment, viewing the facts and inferences drawn therefrom in the light most favorable to the non-moving party." *Seabulk Offshore, Ltd. v. Am. Home Assurance Co.*, 377 F.3d 408, 418 (4th Cir. 2004). "We also review de novo a district court's decision on an issue of contract interpretation." *Id.* Before this Court, neither party disputes the district court's conclusion that New York law applies to the Indemnity Agreement and to the affirmative defense of equitable estoppel. *See Liberty Mut. Ins. Co.*, 2022 WL 16722356, at *3–4. Accordingly, we look to New York law for the applicable equitable-estoppel principles. *See Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 913 F.3d 409, 415 n.4 (4th Cir. 2019) ("Because the parties agree that Virginia law applies, we need not inquire further into the choice-of-law questions, and Virginia law controls the analysis.").

---

[7] We rely on different aspects of the equitable-estoppel test than did the district court. But "[o]ur review is not limited to the grounds the district court relied upon, and we may affirm on any basis fairly supported by the record." *Lawson v. Union Cnty. Clerk of Ct.*, 828 F.3d 239, 247 (4th Cir. 2016) (internal quotation marks omitted), *as amended* (July 8, 2016).

"Under New York [l]aw, a claim for equitable estoppel 'rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury.'" *Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, 720 F.3d 84, 90 (2d Cir. 2013) (quoting *Nassau Tr. Co. v. Montrose Concrete Prods. Corp.*, 436 N.E.2d 1265, 1269 (N.Y. 1982)). New York takes a "rather restrictive view of estoppel," *Holm v. C.M.P. Sheet Metal, Inc.*, 455 N.Y.S.2d 429, 433 (N.Y. App. Div. 1982), because "[t]he purpose of invoking the doctrine is to prevent the infliction of *unconscionable injury and loss* upon one who has relied on the promise of another," *Am. Bartenders Sch., Inc. v. 105 Madison Co.*, 450 N.E.2d 230, 230 (N.Y. 1983) (emphasis added). Thus, "[t]he doctrine of equitable estoppel is to be invoked sparingly and only under exceptional circumstances." *Feliciano v. N.Y.C. Hous. Auth.*, 999 N.Y.S.2d 456, 458 (N.Y. App. Div. 2014) (quotation marks omitted).

For equitable estoppel to apply under New York law, there must be "evidence that a party was misled by another's conduct or that the party significantly and justifiably relied on that conduct to its disadvantage." *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 850 N.E.2d 653, 659 (N.Y. 2006). More specifically, "[t]he elements of equitable estoppel are, with respect to the party estopped, (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts. The party asserting estoppel must show with respect to itself: (1) lack of knowledge of the true facts; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in its

10

position."[8] *Wallace v. BSD-M Realty, LLC*, 36 N.Y.S.3d 884, 887 (N.Y. App. Div. 2016) (cleaned up; quoting *First Union Nat'l Bank v. Tecklenburg*, 769 N.Y.S.2d 573, 574–75 (N.Y. App. Div. 2003)); *see also Rich v. Orlando*, 7 N.Y.S.3d 754, 755 (N.Y. App. Div. 2015) (noting reliance must be in "good faith"). The latter grouping of factors—those "pertaining to the party asserting estoppel"—"are commonly termed the elements of detrimental reliance." *Holm*, 455 N.Y.S.2d at 433.

Atain cannot clear this high bar. We will assume, arguendo, that Liberty made a misrepresentation to Atain with the required knowledge and intent when Liberty's employees emailed Atain's broker in December 2019 to say that Atain would "close" the Appeal Bond and that the bond "ha[d] been cancelled." J.A. 256, 258. Even so, Atain cannot rely on the defense of equitable estoppel because it cannot demonstrate detrimental reliance on that misrepresentation. Atain's detrimental reliance argument falters at the first element: lack of knowledge of the true facts.

Atain claims that, based on the information it received from Liberty, it "understood that the [Appeal] Bond would be closed and would no longer be in existence." Opening Br. at 16. But in New York, a party cannot assert lack of knowledge of the true facts where it failed to exercise reasonable diligence that would have led it to the facts in question. *Twin Town Little League Inc. v. Town of Poestenkill*, 671 N.Y.S.2d 831, 832 (N.Y. App. Div.

---

[8] "An estoppel may [also] arise from silence when the person charged knows or ought to know that the silence will be relied upon." *Rose v. Spa Realty Assocs.*, 400 N.Y.S.2d 919, 920 (N.Y. App. Div. 1978). However, the party asserting estoppel must still demonstrate a "lack of knowledge of the truth as to the facts in question." *Endicott Johnson Corp. v. Bade*, 346 N.Y.S.2d 33, 36 (N.Y. App. Div. 1973).

1998) (declining to apply equitable estoppel where, if the petitioner had "exercised reasonable diligence," it would have discovered the relevant facts); *see also Renz v. Beeman*, 589 F.2d 735, 751–52 (2d Cir. 1978) ("We think that the test for timely knowledge under the [New York] doctrine of equitable estoppel [for tolling a statute of limitations] is similar to that set forth with regard to fraud in [a state statute, that is,] 'could with reasonable diligence have discovered it.'" (quoting N.Y. C.P.L.R. § 213(8))); *cf. KNK Enters., Inc. v. Harriman Enters., Inc.*, 824 N.Y.S.2d 307, 307 (N.Y. App. Div. 2006) (stating, in the context of a fraud claim, that "[a] party cannot claim reliance on a misrepresentation when he or she could have discovered the truth with due diligence").

Atain had access to all the information it needed to understand that it was still on the hook for the Appeal Bond. The Indemnity Agreement, executed by the parties in 2010, undisputedly applied to the Appeal Bond. *See* J.A. 22 (Indemnity Agreement, by its terms, applied "to any bonds . . . requested from and/or issued by [Liberty] before, on or after" March 10, 2010); Reply Br. at 16 ("There is no dispute that the Indemnity Agreement was in force."). That contract obligated Atain to reimburse Liberty for "any and all losses, costs, and damages of whatsoever kind or nature . . . which [Liberty] may at any time sustain or incur by reason of the extension of surety credit to any Principal." J.A. 22. McClure ultimately lost its appeal, and Liberty incurred losses when the Appeal Bond's proceeds came due, thus triggering Atain's duty to indemnify under the plain meaning of the contract.

Further, Atain was a represented, sophisticated party. It knew (or could have discovered with reasonable diligence) that Liberty had posted the Appeal Bond in the

12

underlying action, which was a separate proceeding—taking place in a separate court system—from the coverage action. It knew (or could have discovered with reasonable diligence) that the Appeal Bond, by its terms, would "remain in full force and effect" until McClure "satisf[ied] any money judgment contained in the judgment [in the underlying action] in full." J.A. 32. Atain therefore knew (or could have discovered with reasonable diligence) that its victory against McClure in the coverage action could not possibly extinguish the Appeal Bond, which remained posted *in court* in the underlying action—a fact that McClure's counsel reminded Atain of in April 2020.

Atain argues that Liberty should have notified it—as it apparently had in communications about a prior bond—that the documents Miller sent Dunigan in December 2019 "were insufficient to satisfy Liberty that the [Appeal] Bond could be closed." Opening Br. at 13. And it argues that Liberty should have "advise[d]" it of the "need to obtain a release of the [Appeal] Bond from the State Court in the" underlying action, "or that the [Appeal] Bond remained open independent of Liberty's determination." *Id.* at 15. That may well have been the best practice. But the question is what information Atain knew or could discover through reasonable diligence. It had in its possession all the information necessary to take additional steps to protect its interests. That is enough to defeat application of the narrow doctrine of equitable estoppel under New York law.

## III.

For the foregoing reasons, we affirm the district court's rejection of Atain's equitable-estoppel defense and therefore affirm the grant of summary judgment to Liberty.

*AFFIRMED*

13